722 P.2d 267

**STATE of Arizona, Appellee,**

v.

**CITY COURT OF the CITY OF TUCSON; and Honorable Ann Bowen, Chief Magistrate thereof, Appellants.**

No. 18205.

Supreme Court of Arizona, In Banc.

June 30, 1986.

**100**

Frederick S. Dean, Tucson City Atty. by Elisabeth C. Sotelo, R. William Call and Thomas J. Wilson, Tucson, for appellee.

Waterfall, Economidis, Caldwell & Hanshaw by Cary Sandman, Tucson, for appellants.

CAMERON, Justice.

This matter, transferred from the court of appeals pursuant to Rule 19, Ariz.R.Civil App.P., 17A A.R.S., was brought by the Tucson City Court and its Chief Magistrate, The Honorable Ann Bowen, challenging an adverse ruling by the Pima County Superior Court and The Honorable Lillian

Fisher, Judge. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3).

We must decide only two issues:

1.  Whether a policy of the Chief City Prosecutor that requires all Deputy City Prosecutors to routinely disqualify a certain City Court Magistrate, the Honorable Fernando Fajardo, in all DUI (driving while under influence of intoxicating beverages) cases is an abuse of Rule 10.2 of the Rules of Criminal Procedure, 17 A.R.S.

2.  Whether the Chief Magistrate of the Tucson City Court exceeded her authority in requiring that Deputy City Prosecutors avow that they acted in the exercise of their independent professional judgment before being allowed to file a Rule 10.2 motion to peremptory disqualify Magistrate Fajardo.

The facts are not in dispute. In September 1984, the Chief City Prosecutor of Tucson promulgated a policy requiring all city prosecutors to disqualify Magistrate Fajardo in any proceeding involving DUI. On 15 October 1984, the Tucson City Court Chief Magistrate, Ann Bowen, issued an order in response to this policy. In her order, Chief Magistrate Bowen set forth statistics on the number of challenges to Magistrate Fajardo during the previous *three-week* period. During that period 258 Notices of Change of Judge were filed by city prosecutors against Magistrate Fajardo compared to fewer than 50 Notices of Change of Judge filed in Pima County Superior Court during the previous *six month* period. Chief Magistrate Bowen concluded by ordering that:

each and every Request for Change of Judge filed by the city prosecutor today and in the future, is likewise DENIED ... without examination of the individual defendant's files until such time as proof by avowal of each individual Assistant City Attorney who files such request for counsel that such Request is being filed as an act of independent exercise of professional judgment by the attorney making the Request for Change of Judge and

not as a result of an order to engage in the "policy" which has the appearance of being part of an invidiously discriminatory pattern.

Although the order was not made public a copy of the order was sent to the Chief City Prosecutor William Call.

Thereupon, the Chief City Prosecutor brought a special action in superior court contesting the order. The City Prosecutor in his petition to the superior court stated the policy as follows:

### V

Commencing on or about September 24, 1984, Petitioner by and through Tucson City Prosecutor's Office, began exercising its peremptory rights, pursuant to Rule 10.2, Rules of Criminal Procedure, 17 A.R.S., to require a change of judge in all DUI cases which were set or were to be set before Hon. Fernando Fajardo, Magistrate of the City Court.

### VI

The reasons for the implementation of this policy were that Judge Fajardo had consistently been ruling against the State in an arbitrary and capricious manner, both in pretrial motions, and at trial.

The city court response contained the uncontested affidavit of Magistrate Fajardo which stated:

4) That as a result of the office policy of filing notice of change of judge against me, I have had several meetings with City Attorney's office officials.

5) One such meeting was held with Mr. William Call and Mr. Frank Kern of the City Prosecutor's office. A subsequent meeting was held with Mr. Fred Dean and Mr. Call in the presence of Council members, Rudy Bejerano and Charles Ford.

6) That it has been made clear to me at the several meetings that the purpose of the notices of change of judge was to "re-educate me". That is, that the first time period of notices of change of judge that were filed was done to make a point that I would not be allowed by the City Prosecutor to hear cases unless my approach to the law changed. I was told that it was felt that the short period of notices of change of judge was "sufficient" to teach me my lesson.

7) I was specifically advised by Mr. Call that the first period of notices of change of judge "didn't do any good" and as a consequence, as a matter of office policy, notices of change of judge were once again filed against me in DWI cases.

8) I have been advised by officials of the City Prosecutor's office that the notices of change of judge "will not go on forever" but that as my manner of ruling changes I will be "permitted" once again to sit as a Magistrate on DWI cases.

After an evidentiary hearing, Judge Lillian Fisher ruled that the order of the Chief City magistrate should be vacated. The City Court of the City of Tucson and the Honorable Ann Bowen filed a notice of appeal to the court of appeals. We transferred the case from the court of appeals to this court pursuant to Rule 19, Ariz.R.Civil App.P., 17A A.R.S.

### WAS THE POLICY AN ABUSE OF THE RULES OF CRIMINAL PROCEDURE?

The Arizona Rules of Criminal Procedure, 17 A.R.S., set forth a two-procedure scheme for judge disqualification. Pursuant to Rule 10, a judge can be disqualified either for cause, Rule 10.1, or peremptorily, Rule 10.2.

Rule 10.1 requires a party to file a motion verified by affidavit, alleging that the party cannot get a fair and impartial hearing because the assigned judge is biased and prejudiced and specifically alleging the grounds for such a belief. If the motion is timely filed, then the presiding judge shall provide for a hearing on the allegations of bias and prejudice.

By contrast, Rule 10.2 permits a party to disqualify a judge for no cause or reason. Under Rule 10.2, a party may exercise his right to a change of judge merely by filing a pleading entitled "Notice of Change of Judge." No allegation of bias or prejudice is required by Rule 10.2. *See State v. Keel*, 137 Ariz. 532, 534, 672 P.2d 197, 199 (App.1983). Arizona is part of a minority of three states, along with Indiana and North Dakota, with such a "liberal" rule of disqualification. *See* Note, *Peremptory Challenges of Judges: The Arizona Experience*. Law and the Social Order 1973:95. Since the issue in the instant case involves peremptory challenges, we will focus only on Rule 10.2.

Once the Notice of Change of Judge has been filed, the procedure under Rule 10.2 is summary and automatic. If the Rule 10.2 request has been filed timely, then "the case shall be transferred immediately to the presiding judge who shall reassign the case to a new judge." Rule 10.5. Once the notice has been filed, the challenged judge may not proceed further in the action, except to make temporary orders as are necessary in the interest of justice before the action is transferred to the presiding judge. Rule 10.6.

Rule 10.2 on its face applies only to cases in the superior court. We have, however, extended the applicability of Rule 10.2 to non-record courts such as the Tucson City Court. *Cain v. City Court of City of Tucson*, 135 Ariz. 96, 98, 659 P.2d 649, 651 (1983).

> The right of a criminal defendant to a change of judge without cause is zealously protected and on the basis of fairness extended beyond the superior court.

*State v. Keel*, 137 Ariz. at 534, 672 P.2d at 199 (App.1983).

■ It is clear that city prosecutors have the authority under Rule 10.2 to challenge Magistrate Fajardo peremptorily. We believe, however, that the exercise of peremptory challenge by the City Prosecutor in the manner and for the reasons described herein was an abuse of the Rules of Criminal Procedure for two reasons.

First, the procedure infringed upon the obligation of each Deputy City Prosecutor to exercise his or her individual professional judgment on a case by case basis. The admitted policy here was to require each deputy as a matter of policy to exercise peremptory challenge to Magistrate Fajardo, regardless of whether the attorney handling the case believed this was mandated. As the Washington Supreme Court has noted:

> In our view, this fixed formula which requires a particular action *in every case* upon the happening of a specific series of events constitutes an abuse of the discretionary power lodged in the prosecuting attorney.

*State v. Pettitt*, 93 Wash.2d 288, 296, 609 P.2d 1364, 1368 (1980) (emphasis in original).

Second, the policy amounted to an improper attempt to influence a judge in his judicial decisions. The effect of this policy was to bring pressure upon Magistrate Fajardo. We agree with the dissenting opinion of Justice Tobriner of the California Supreme Court who stated:

> In my view, the use of "blanket" challenges under section 170.6 to disqualify a judge because of his judicial philosophy or his prior rulings on questions of law seriously undermines the principle of judicial independence and distorts the appearance, if not the reality, of judicial impartiality.

*Solberg v. Superior Court*, 19 Cal.3d 182, 205, 137 Cal.Rptr. 460, 475, 561 P.2d 1148, 1163 (1977), (TOBRINER, J., dissenting).

The hope of the City Prosecutor was that Judge Fajardo would make rulings favorable to his client. This is always the hope of an advocate and it can most often be realized by adequate preparation and professional exercise of a lawyer's skills. The Tucson City Prosecutor's policy with its attendant effects was an attempt to intimidate not only Magistrate Fajardo but by example the entire Tucson City Court. As such the policy was an abuse of the rules and a threat to the independence and integ-

rity of the judiciary which cannot be allowed.

We hold that the blanket order of the City Prosecutor that Magistrate Fajardo be peremptorily challenged was not only an improper restriction on the professional independence of the deputy city prosecutors as well as threatening the independence of the judiciary, but an abuse of Rule 10.2 which significantly frustrated its purpose.

## CHIEF CITY MAGISTRATE'S ORDER

■ We now turn to the issue of whether the Chief Magistrate had the authority to require all city prosecutors to make an avowal of good faith when they filed a Notice of Change of Judge. We believe she did not. The effect of the order of the municipal court was to create a local rule of court.

We have stated:

Following the adoption of the amended 1960 state constitution, this court was given exclusive power to make rules relative to all procedural matters in any court. Ariz. Const., art. 6, § 5, Subsec. 5, added 1960; *State v. Blazak*, 105 Ariz. 216, 462 P.2d 84 (1969). We have held that this rule-making power may not be supplemented or superseded by a Superior Court. *Anderson v. Pickrell*, 115 Ariz. 589, 566 P.2d 1335 (1977). We reenforced this constitutional position when we adopted Rule 36, Arizona Rules of Criminal Procedure, 17 A.R.S. (1973):

"Any court may make and amend rules governing its practice not inconsistent with these rules. No such rule shall become effective until approved in writing by the Supreme Court."

This rule allows adoption of local rules of practice and procedure, but only with our approval. Since we did not approve the guidelines, they did not become effective. Rule 36, supra.

*Hare v. Superior Court*, 133 Ariz. 540, 542, 652 P.2d 1387, 1389 (1982).

In the instant case, the court required the prosecutor to make an avowal of good faith and independent professional judgment before they could avail themselves of the right of a peremptory challenge to the judge. The order was in effect a local rule which was not approved by this court and is of no force and effect. *See also Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984).

## CHARGES OF UNETHICAL CONDUCT

We note the allegations of unethical conduct made by both the city prosecutor and the city magistrate. The allegations added little to this case and have instead detracted from the presentations of the parties. If there are in fact ethical violations, there are proper forums other than this one to consider these violations.

We would omit comment on these allegations of ethical violations, but for the fact that our disposition of this case is contrary to the City Prosecutor's view of what is judicial misconduct and we therefore speak on that issue.

The City Prosecutor in his brief and statements contended that the City Magistrate acted unethically by having the order affect only the prosecutor and not the public defender. At oral argument the City Prosecutor stated:

Mr. Call: I would also like to say that this Order No. 2 is also in violation of Judiciary Ethics Cannon No. 2 in that it is not impartial and that it also only goes to the State. It does not affect the defense bar.

■ We disagree with the city prosecutor. Fairness and impartiality does not mean that every criminal rule must be symmetrically or equally applied to both the defendant and the prosecution. The difference is that prosecutors have a duty to do justice, A.B.A. Standards for Criminal Justice § 3–1.1 (1980), and defense attorneys have a duty to represent their clients within ethical constraints, A.B.A. Standards for Criminal Justice § 4–1.1 (1980). Because of the nature of the criminal law, the rules cannot in all cases be applied on a one-for-one basis. We could, for example, grant the defendant a right to peremptory challenge of a judge and not give that same

right to the prosecutor. Indeed, some states do give this right to the defendant only and not to the state. *See,* for example, Smith-Hurd Illinois Annotated Statutes, Chapter 38, § 114–5(a) and Wisconsin Rules of Criminal Procedure 971.20(2). We find no ethical, legal or constitutional problem in denying the right to peremptory challenge to the state while not applying it to the defense. This is especially true where as here the abuse of the rule by the state is readily apparent and abuse by the defendant is not.

### DISPOSITION

The Supreme Court has the rule-making power for all courts in the state. *State v. Blazak,* 105 Ariz. 216, 462 P.2d 84 (1969). This rule-making power allows the court to monitor the use of its rules and encompasses the power to suspend the application of the rules where the ends of justice require. Therefore, as to pending cases, it is ordered dismissing all requests for peremptory change of judge directed at Judge Fajardo made by the City Prosecutor or his deputies. As to future cases, if the City Prosecutor does not terminate his policy of peremptorily challenging Judge Fajardo in all DWI cases, then we will be forced to suspend indefinitely the availability of Rule 10.2 to the City Prosecutor until such time as we are satisfied that the rule is not being abused by the City Prosecutor or his deputies.

GORDON, V.C.J., and FELDMAN, J., concur.

HAYS, J., did not participate in the determination of this matter.

HOLOHAN, Chief Justice, dissenting.

Provisions for the disqualification of a judge in a criminal case without an actual showing of bias have been part of the law of this state since the 1913 Penal Code. Under § 999 of the Penal Code of 1913 the statutory procedure for disqualification of a judge in a criminal case was in effect a peremptory challenge which required the trial judge to step aside without any showing of actual bias. *Sam v. State,* 33 Ariz. 383, 265 P. 609 (1928). With the advent of the 1939 Code, the right to disqualify a judge in a criminal case was extended to the State as well as the defendant. A.R.S. § 44–1201, 1939 Code, Rules of Criminal Procedure No. 248.

At first the disqualification statutes and rules were limited to the superior court, but in 1983 the right to peremptorily challenge a judge was extended to the municipal courts in those cases in which the defendant did not enjoy the right to a *de novo* review of the conviction. *Cain v. City Court of City of Tucson,* 135 Ariz. 96, 659 P.2d 649 (1983). The rationale for the decision in *Cain* was that *the parties* to the criminal action in non-record courts should have, as a matter of fairness, the same right to peremptory challenges as parties in the superior court.

It is basic that the State has an equal right with the defendant to an impartial court. *State v. Barnes,* 118 Ariz. 200, 575 P.2d 830 (1978). The peremptory disqualification rule recognizes that it is often difficult to prove actual bias, so a party is entitled to disqualify a judge without the necessity of proving actual bias or prejudice.

It has been recognized that the use of the peremptory challenge to disqualify a judge could be misused for such purposes as obtaining a continuance without any real belief that the judge was biased or prejudiced. *Sam v. State,* 33 Ariz. 383, 265 P. 609 (1928). Despite the recognition of some abuse in the use of the disqualification rule, this court has nevertheless for many years adhered to the proposition that it is better to uphold the right to the peremptory challenge of a judge rather than become involved in some technical examination of the basis of the challenge. This same position has been followed in California. Faced with a challenge to the procedure of allowing the prosecutor to peremptorily challenge a judge, the California Supreme Court stated:

We conclude that to the extent that abuses persist in the utilization of section

170.6 [peremptory challenge section] they do not, in our judgment, "substantially impair" or "practically defeat" the exercise of the constitutional jurisdiction of the trial courts. Rather, it may be helpful to view them as a relatively inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6. The statute thus remains a reasonable—and hence valid— accomodation of the competing interests of bench, bar, and public on the subject of judicial disqualification. We do not doubt that should future adjustments to this sensitive balance become necessary or desirable, the Legislature will act with due regard for the rights of all concerned.

*Solberg v. Superior Court of City and County of San Francisco*, 19 Cal.3rd 182, 204, 137 Cal.Rptr. 460, 474, 561 P.2d 1148, 1162 (1977).

I disagree with this court's action in dismissing all the peremptory challenges to Magistrate Fajardo. If that individual isn't actually prejudiced against the prosecutor after these proceedings, he would be less than human. It must be noted in the so-called uncontested affidavit of the magistrate that he met with officials of the city attorney's office to discuss the matter of the notices of change of judge. Slip opinion, at 3. Thus, the magistrate has taken more than a casual interest in this process. He charges that the city prosecutors are trying to teach him a lesson. The impartiality of this judicial officer is compromised. In passing, it is also worthy of note that the magistrate probably violated Canon 3 of Judicial Conduct by entering into discussions with the city prosecutors about the challenges in DWI cases. In Canon 3 a judge is reminded to be faithful to the law without regard to public clamor or fear of criticism. Canon 3 A(1). The magistrate should discharge his duties under the law as he understands it, and he should not have become involved in discussions with the prosecutor about disqualification in DWI cases.

The city prosecutor and his staff are certainly not blameless in this saga. If the purpose of the disqualification was to "educate" the magistrate, the attorneys may have violated the Arizona Rules of Professional Conduct in attempting to improperly influence a judge. *See* Rules of Professional Conduct ER 3.5. In any event, there is a proper forum which has been created to handle lawyer discipline, and we should not confuse that procedure with the right of the State to disqualify a judge.

Turning to the prosecutor's use of the peremptory challenge, it has long been recognized that such a challenge is a means to disqualify a judge when a party believes that the trial judge has a history or pattern of ruling in favor of one side or at least seeming to be partial to that side. As noted earlier, it is difficult to establish that such a position is actually present to such a degree that it would constitute actual cause for removal of the trial judge from the case. The necessity for that proof is removed by allowing the peremptory challenge. If a magistrate has consistently ruled against positions taken by the State, the prosecutor has a perfectly legitimate right to have that judge removed from future cases. In my judgment, there is absolutely nothing improper in the head of a prosecutorial office establishing a policy that the office will file a notice of disqualification against a given judge in a particular type of case when it appears that the judge favors the defense. Whether the perception of the supervisor has a sound basis is of no consequence; the State is entitled to have its case considered in a fair and impartial manner. The prosecutor would be derelict in his duty in allowing a magistrate or judge to continue to hear cases brought by the State when the attorney for the State is convinced that the magistrate is biased against the State. There should be no restriction on the chief prosecuting officer instructing the attorneys under his or her supervision to also file challenges to the same judicial officer who is perceived to be unfair to the State. There would not be the slightest protest by this court had the record shown it was a

defense counsel who had a policy of disqualifying a specific judge every time a case was referred to that judge. Nor would there be any objection if the senior partner of a firm directed that the cases of that firm not be taken before a certain judge because the partner believed that judge was not fair and impartial in particular types of litigation conducted by the firm. Such a position would be passed off as simply good advocacy on behalf of the client. When a similar position is taken by the prosecutor, it somehow becomes a matter of injustice. It appears to me that the majority opinion really says that the State's not entitled to the same fair trial that we guarantee to defendants. I dissent.