**STATE of South Dakota, Plaintiff and Appellant,**

**v.**

**Robert Dean TAPIO and Blaine John Brings Plenty, Defendants and Appellees.**

**Nos. 16283, 16285, 16320 and 16323.**

Supreme Court of South Dakota.

Argued Aug. 30, 1988.

Decided Nov. 30, 1988.

Wade A. Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Roger A. Tellinghuisen, Atty. Gen., and Thomas H. Harmon, Deputy Atty. Gen., Pierre, on brief.

George E. Grassby, Rapid City, for defendant and appellee Robert Dean Tapio.

James F. Margadant, Rapid City, for defendant and appellee Blaine John Brings Plenty.

MILLER, Justice.

In this consolidated intermediate appeal, we reverse the orders of the trial court which (1) reinstated a disqualified judge to preside over two criminal actions, (2) removed the state's attorney and his staff from prosecuting the actions, and (3) required the attorney general to assume prosecution of the actions. We affirm that part of the trial court's orders raised by notice of review, which denied defendants Robert Dean Tapio's and Blaine John Brings Plenty's (appellees') motions to dismiss grounded on prosecutorial misconduct.

## PROCEDURAL HISTORY AND FACTS

Appellees currently stand charged by Information in Pennington County, South Dakota, for the alternative offenses of first-degree murder, second-degree murder, or first-degree manslaughter, and a second count of first-degree manslaughter. Each also stands charged with being an habitual offender. Appellees made an initial appearance and were later afforded a preliminary hearing in circuit court. Both appellees' cases were then assigned to the Honorable Merton B. Tice, Jr. for trial.

Pennington County State's Attorney Dennis Groff (Groff) thereafter requested by letter that Judge Tice remove himself from the cases. Such request was denied by Judge Tice and affidavits for change of judge were subsequently filed by Groff. The presiding judge, the Honorable Marshall Young, as required by SDCL 15–12–32, reviewed the affidavits, and, after determining that everything was in order, assigned the cases to himself.

At their arraignment, appellees objected to Groff's affidavits for change of judge and further informed the court that they planned to file motions to dismiss the charges grounded on prosecutorial misconduct. Motions to dismiss were subsequently filed, alleging that the State's improper use of the affidavits for change of judge against Judge Tice amounted to prosecutorial misconduct.

Presiding Judge Young disqualified all of the judges of the Seventh Judicial Circuit from considering appellees' objections to the affidavit for change of judge and their motions to dismiss. Chief Justice Wuest subsequently assigned the Honorable Scott Moses of the Eighth Judicial Circuit to consider the objections and hear the motions for dismissal.

At the hearing, Judge Moses, over objection, ordered that Groff testify concerning the contents of his affidavits for change of judge. Groff testified that he had filed affidavits against Judge Tice in all (at least eighty-three) felony cases since July 1986 pursuant to a policy adopted by him at that time. He also stated that he had personally signed all of the affidavits and complied

with the statutory provisions for removal of the judge in each case. Groff was also required to testify, over objection, concerning his reasons for wanting to remove Judge Tice.[1]

Judge Moses (hereinafter referred to as trial court) determined that Groff's blanket removal of Judge Tice from all felony cases without any case-by-case analysis amounted to bad faith. The trial court then concluded that the policy used by Groff constituted an abuse of the rules of criminal procedure, amounting to prosecutorial misconduct.

The trial court found that while prosecutorial misconduct had occurred, it was not prejudicial to appellees and held that the appropriate remedy for the misconduct was to disqualify Groff from prosecuting the cases. Further, the trial court disqualified the entire staff of the state's attorney's office from prosecuting the cases because the decision to remove Judge Tice from all felony cases was ultimately made by Groff in each instance. The trial court then ordered that the Office of the Attorney General prosecute these cases. The trial court finally ordered that Judge Tice be reinstated to preside over the cases since the affidavits filed against him were made in bad faith and therefore were invalid.

The State appeals the trial court's decision, alleging that the court erred when it required Groff to establish actual prejudice to support his affidavits for removal of the judge pursuant to SDCL 15–12–26, that the court erred in finding prosecutorial misconduct and that the court erred in disqualifying the entire state's attorney's office from the cases and appointing the attorney general in its place.

Appellees allege that Groff's blanket disqualifications of Judge Tice constituted prosecutorial misconduct which prejudiced them. Thus, they argue, by notice of review, that the trial court should have granted their motions to dismiss with prejudice.

## DECISION

### I

### WHETHER SDCL 15–12–26 REQUIRES A SHOWING OF ACTUAL PREJUDICE TO SUPPORT AN AFFIDAVIT FOR REMOVAL OF A JUDGE.

 The procedure to obtain a change of judge in any action, be it civil or criminal, is simple and clear. *See* SDCL ch. 15–12. If any party or attorney desires a change of judge they must first informally (by letter, oral communication or on the record in open court or chambers) request the judge to disqualify himself. SDCL 15–12–21.1. The person seeking to disqualify the judge *cannot be required to state his reasons*, and although opposing litigants are to receive copies of correspondence or be apprised of any communications, *they cannot contest the request.* SDCL 15–12–21.1. If the judge grants the request, the presiding circuit judge is notified and a replacement judge is assigned. If the judge denies the request, he must so notify the parties or attorneys in writing.

Under SDCL 15–12–22, the party or attorney whose informal attempts at changing judge have been denied, may file an affidavit seeking to disqualify the judge. SDCL 15–12–26 sets forth the form and content of such affidavits, stating:

An affidavit for change of judge or magistrate shall state the title of the action and *shall recite that the affidavit is made in good faith and not for the purpose of securing delay*, that in the

---

1. Groff testified that, in his opinion, Judge Tice was a "social worker" judge and that Judge Tice was indecisive with respect to rulings and that Tice's rulings were bad. Groff further stated that he had previously had trouble with Judge Tice regarding extradition of prisoners, with the use of immunity in grand jury proceedings, and that he had problems with Judge Tice's use of his statutory right to modify sentences. Groff further claimed that Judge Tice did not have cases disposed of within the 180–day rule and that he gave the defendants appearing before him ineffective or insufficient advice of their rights at their arraignments. Groff also stated that he disliked the way that Judge Tice "pow-wowed" with respect to talking to attorneys, probation officers, presentence investigators and social workers involved in a case prior to sentencing a defendant.

ordinary course of litigation such action or some issue therein is expected to come on for trial before such judge or magistrate sought to be disqualified; *that the party making such affidavit has good reason to believe and does actually believe that such party cannot have a fair and impartial trial* before the named judge or magistrate. Only one judge or magistrate shall be named in such affidavit. *It shall not be necessary to state in such affidavit the ground or reason for such belief.* (Emphasis added.)

After the affidavit has been properly served and filed, it is submitted to the presiding circuit judge who reviews it under SDCL 15–12–32. If the presiding judge determines that the affidavit is "timely and that the right to file the affidavit has not been waived or is not otherwise legally defective," he shall assign the case to another circuit judge.

Our rule [2] does not require a specific showing that the judge against whom disqualification is sought is, in reality, prejudiced. This has not always been the case. South Dakota, prior to amending its procedure, previously required that the affiant had reason to believe that "a fair and impartial trial or hearing cannot be had before said judge by reason of the *prejudice or bias* of such judge." (Emphasis added.) *See* 1927 S.D.Sess.L. ch. 89, § 2. This court, by rule, amended the former statute, deleting the "prejudice or bias" language. From that point forward, proof of prejudice was no longer required.

SDCL 15–12–26, as it currently reads, is silent as to whether the "good faith" of the affiant is to be analyzed from an objective or subjective viewpoint. It merely states that the affidavit must be made in good faith and not for the purpose of delay and that the affiant has good reason to *believe and does actually believe* that the party cannot have a fair and impartial trial be-

fore the judge against whom disqualification is sought. The rule also specifically states that it is not necessary that the affiant state the grounds or reasons for his belief. (It must be remembered, too, that under SDCL 15–12–21.1 the person seeking an informal disqualification cannot be required to state his reasons.) Under SDCL 15–12–32, the presiding judge must review the affidavit but the rule does not require that the presiding judge look behind the face of the affidavit to determine the objective good faith of the affiant. The record here reflects that the presiding judge complied with SDCL 15–12–32.

Reading SDCL ch. 15–12, as a whole, we believe that an affiant (be he a prosecutor, defense counsel or defendant in a criminal action or an attorney or litigant in a civil action) must not be subjected to an objective standard in order to determine whether the affidavit was made in good faith. Rather, all that is required is that the affiant *in his own mind* actually and in good faith believes that he cannot have a fair and impartial trial before the named judge. Thus, the trial court's attempt here to require an objective standard for determining an affiant's (Groff's) good faith was erroneous, necessitating reversal.

II

WHETHER THE STATE'S ATTORNEY'S CONDUCT WARRANTED DISMISSAL OF THE CHARGES.

In order to exercise a remedy for prosecutorial misconduct, this court has held that such misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. It must be a prejudicial error which will probably produce some effect on the final result. *State v. Rosales*, 302 N.W.2d 804 (S.D.1981). Prosecutorial misconduct arises only in relation to its effect on the

---

2. Other states have various rules regarding the disqualification of judges. Some states require the filing of an "affidavit of prejudice," which requires an affidavit stating that the judge to be disqualified is prejudiced and that such affidavit be submitted as part of the procedure for removal. *See, e.g., State v. Wiess*, 250 Or. 252, 430

P.2d 357 (1967). Other states provide a peremptory rule which allows counsel to challenge a judge merely by completing a few procedural requirements. *See, e.g., State v. City Court of City of Tucson*, 150 Ariz. 99, 722 P.2d 267 (1986). Some states utilize both types of rules. *Id.*

defendants. *State v. Ashker*, 412 N.W.2d 97 (S.D.1987). What constitutes prosecutorial misconduct must be decided on a case-by-case basis. *State v. Kidd*, 286 N.W.2d 120 (S.D.1979). While Groff's conduct may be questionable, his actions did not rise to the level of prosecutorial misconduct, warranting dismissal of the charges.

### III

### WHETHER THE TRIAL COURT HAD THE AUTHORITY TO REMOVE ALL MEMBERS OF THE STATE'S ATTORNEY'S OFFICE.

■ Part of the trial court's remedy for Groff's alleged misconduct was the disqualification of the entire staff of the Pennington County State's Attorney's Office. The trial court's decision was premised upon the fact that Groff was ultimately responsible for deciding to attempt to remove Judge Tice. Although this issue has been rendered moot by our holding earlier herein, we must observe that we find absolutely no authority to support the trial court's decision. We conclude that the trial court exceeded its authority in disqualifying the entire state's attorney's office from these cases. There are other ways to discipline an errant state's attorney. *See State v. Catch The Bear*, 352 N.W.2d 637 (S.D. 1984).

### IV

### WHETHER THE TRIAL COURT MAY REQUIRE THE ATTORNEY GENERAL TO PROSECUTE WHEN THE STATE'S ATTORNEY HAS BEEN DISQUALIFIED.

■ This issue, too, has been rendered moot by our holding, *supra*. However,

because of its importance, we feel compelled to give guidance to trial courts should similar circumstances arise in the future.

The trial court here based its order on SDCL 7–16–2, which provides:

The circuit court, whenever there shall be no state's attorney for the county or when the state's attorney is absent or unable to attend to his duties or is adversely interested or disqualified, may appoint, by an order to be entered in the minutes of the court, some duly licensed attorney and counselor at law to perform for the time being the duties required by law to be performed by the state's attorney and the person so appointed shall thereupon be vested with all the powers of such state's attorney for that purpose....

This statute makes no reference to the court's authority to appoint the attorney general's office to assume the duties of a disqualified state's attorney. The appropriate, traditional practice in this state has been for the court to appoint another attorney in the same locality to serve in the absence or disqualification of the state's attorney. Our research fails to reveal any authority or instance where the attorney general could be mandatorily appointed to serve in lieu of a state's attorney.[3]

For the foregoing reasons, the circuit court's order is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

HENDERSON, J., concurs.

WUEST, C.J., concurs specially.

---

3. Appellees' reliance on *State v. Tarr*, 62 S.D. 305, 252 N.W. 854 (1934), for the proposition that the attorney general may be required to take over for a disqualified state's attorney, is misplaced. In *Tarr*, the circuit court removed the Gregory County State's Attorney for misconduct and appointed a "special state's attorney" as his substitute. This court, on appeal, held that the circuit court was without the power to oust the duly elected state's attorney, and stated that "[i]f the court believed that the state's attorney was abusing his office or misconducting himself in the Tarr case, doubtless the Attorney General might have been called in or other proper steps might have been taken. ..." 62 S.D. at 309–10, 252 N.W. at 857. This remark regarding the attorney general was not intended to grant the court the power to order the attorney general to serve for a disqualified state's attorney. Rather, it refers to the attorney general's supervisory authority over the several state's attorneys pursuant to SDCL 1–11–1(5). The circuit court was thus acting beyond its authority when it ordered the attorney general to take over the prosecution of these cases.

MORGAN, J., concurs in part and dissents in part.

SABERS, J., dissents.

WUEST, Chief Justice (concurring specially).

I concur. Under the present rule there is no other logical choice.

MORGAN, Justice (concurring in part, dissenting in part).

I concur in the majority disposition of issues II to IV, inclusive, but I dissent from the majority on issue I. In spirit, I agree with Justice Sabers' argument, as far as it goes, and I agree that the rule does not need amendment.

SDCL 15-12-26 arises from a Supreme Court rule. The rule is designed and has well served the process of the recusal of a trial judge from an individual case where, for appropriate reason, a party feels that the trial judge should not preside. In this case, however, we have an aberration. The trial judge, who was elected by the voters of the Seventh Circuit to preside over civil and criminal trials in that circuit, is the target of a campaign by the states attorney of one county in the circuit, to remove that trial judge from the trial of *all* criminal felony cases in that county. That cannot be. State's Attorney Groff is an officer in the Executive Branch. By this offensive conduct, he has, for over two years exerted control over a duly elected officer of the Judicial Branch. The majority finds itself too busy attempting to analyze the rule with respect to the state's attorney's conduct. This need not be. Groff's conduct is purely and simply bad faith. It cannot be countenanced under the good faith requirement of the rule.

I would affirm the reinstatement of Judge Tice to preside over the defendants' cases.

SABERS, Justice (dissenting).

I concur with the majority opinion except for that portion of the opinion which writes "good faith" completely out of SDCL 15-12-26. To sing an old song if the legislature wants to amend the statute by writing "good faith" out of the statute that is their prerogative and it is up to the legislature not the courts to do so. This old song should apply equally to this court-made rule.

The state's attorney's practice of filing blanket affidavits of prejudice against Judge Tice brings the question of "good faith" into play and allows the defense to move for dismissal for prosecutorial misconduct. The blanket filing of eighty-three affidavits of prejudice was in bad faith and therefore Judge Moses' order reinstating Judge Tice should be affirmed.

The record clearly establishes sufficient bad faith on the part of State's Attorney Groff:

1. He filed at least eighty-three affidavits for change of judge against Judge Tice.

2. Since about July 1986, State's Attorney Groff adopted a systematic policy for the Pennington County State's Attorney's office whereby an affidavit of prejudice pursuant to SDCL Chapter 15-12 was filed against Judge Tice in every felony criminal case.

3. These affidavits were filed on all cases where Judge Tice was assigned to a criminal felony case after a preliminary hearing.

4. The filing of these affidavits increased the work load and created scheduling problems with respect to assigning new judges in the Seventh Circuit.

5. He filed these affidavits because he did not agree with Judge Tice's handling of certain matters not connected with the trial process. He did not present any evidence that Judge Tice could not conduct a fair and impartial trial for the state of South Dakota. He was determined to continue to disqualify Judge Tice from every criminal felony case after preliminary hearing.

6. He was the only one who exercised the peremptory challenge for the office of the state's attorney.

7. He made the decision in all cases and did not allow any of the deputy state's

attorneys to become involved in this decision-making process.

8. The deputy state's attorneys were not allowed to exercise their independent judgment.

9. He did not examine each particular case with respect to the removal of Judge Tice and therefore there was no independent case-by-case analysis of the need to remove Judge Tice. Instead, he adopted an office policy of filing such an affidavit against Judge Tice in every felony criminal case no matter who the defendant may be, no matter what the charge might be, and regardless of the individual facts in the case.

10. The affidavits were routinely prepared by the secretaries in the state's attorney's office. Pre-printed forms were used which the secretary filled out in every felony criminal case to which Judge Tice had been appointed.

11. Judge Tice knew of no reason why State's Attorney Groff filed affidavits of prejudice against him and had no knowledge of any grounds that would disqualify him under Canon 3C, or otherwise disqualify him from presiding over criminal felony cases, or Tapio or Brings Plenty's cases.

12. The affidavits in Tapio and Brings Plenty's cases were filed pursuant to this general office policy. State's Attorney Groff knew of no specific matters of prejudice involving Tapio or Brings Plenty. These affidavits were based upon the same general office policy that he followed when he filed all other similar affidavits since July of 1986.

13. State's Attorney Groff's activity constitutes blanket challenges against Judge Tice.

Defense counsel persuasively argued that "Our rules are just fine" and that State's Attorney Groff is simply abusing the rule. "The Rules of Civil Procedure (Rule 11) come with the territory" and this is the "first time" the rule was violated in South Dakota. Defense counsel further argued that this abuse was established before there was any inquiry, i.e., the gross abuse gave rise to the inquiry and "Our option is whether we allow the abuse to continue." I would not allow this abuse to continue.

In summation, I submit that there is absolutely no need to change the rule set forth in SDCL 15-12-26. We simply need to enforce this "good faith" requirement of the rule and prevent "bad faith" abuses of same. Therefore, I respectfully dissent.