886 P.2d 1364

**Raymond ESPINOZA, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, IN and FOR the COUNTY OF MARICOPA, the Honorable Gregory H. Martin, a judge thereof, Respondent Judge,**

**The STATE of Arizona, ex rel. Richard ROMLEY, Maricopa County Attorney, Real Party in Interest.**

No. 1 CA–SA 93–0236.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 21, 1993.

Review Granted April 5, 1994.*

---

* Martone, J., of the Supreme Court, dissents from the order granting the petition for review.

Wisdom, Logan & McNulty by James L.P. Logan, Jr., Phoenix, for petitioner.

Grant Woods, Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for respondent.

Richard M. Romley, County Atty. by Gerald R. Grant, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

GERBER, Presiding Judge.

## BACKGROUND

■ Petitioner Raymond Espinoza (Espinoza) brings this special action challenging the trial court's rejection of the plea agreement he reached with the Maricopa County Attorney. We take jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Rules 3 and 7 of the Rules of Procedure for Special Actions because the issues reflect statewide concern in the criminal justice system and are likely to recur.

The general issues presented are: 1) whether the trial court's rejection of a plea agreement pursuant to an announced "quadrant B policy" violates the rules of criminal procedure; 2) whether the "quadrant B policy" improperly creates a local rule; and 3) whether the "quadrant B policy" violates the Fourteenth Amendment of the United States Constitution.

The Superior Court criminal divisions in Maricopa County are divided into four quadrants. Each quadrant is assigned a designating letter A through D. In January 1993, the five judges of quadrant B adopted a policy that states in relevant part:

> 1. Plea agreements may stipulate to "probation," or "department of corrections" for felonies, or "county jail" for misdemeanors. Agreements may *not* stipulate to *any* term of years (other than lifetime probation in dangerous crimes against children) or to *any* non-mandatory terms and conditions of probation (including, but not limited to, jail time, fines or surcharges, or community service hours), or to sentences running concurrently or consecutively, except for DOC time followed by lifetime probation in dangerous crimes against children.

In a memorandum explaining this policy, the quadrant B judges recognized that Arizona Rule of Criminal Procedure 17.4 permits the parties to negotiate and reach agreement on "any aspect of the disposition of the case." They concluded, however, that the court had discretion to reject a stipulated sentence on the ground that the parties should not be allowed to dictate sentencing to an unwilling court.

## PROCEDURAL BACKGROUND

In June 1993, Espinoza was indicted for one count of offering to sell narcotic drugs, a class 2 felony, and one count of misconduct involving weapons, a class 4 felony. The case was assigned to a court division within quadrant B. Espinoza eventually appeared before respondent Judge Martin seeking to enter a plea of guilty pursuant to a plea agreement crafted by the attorneys involved. Judge Martin refused to consider the plea agreement because it contained a stipulation that Espinoza's sentences were to run concurrent with each other and with a probation violation. The rejection rested solely on quadrant B's policy. Judge Martin stated that the sentence stipulations violated the quadrant B policy. Espinoza then filed this special action.

The Attorney General's Office, representing the respondent judge, argues that this court should not accept jurisdiction because

the claim in this case was previously decided in *State ex rel. Bowers v. Superior Court,* 173 Ariz. 34, 839 P.2d 454 (App.1992). We disagree. In *Bowers,* an individual judge summarily rejected a plea agreement containing sentence stipulations because he found the stipulated sentences "repugnant." *Id.* at 40, 839 P.2d at 460. The instant case differs from *Bowers* in part because it presents the unique question whether a quadrant of judges, rather than an individual judge, may adopt a formal written policy requiring rejection of plea agreements with sentence stipulations. We accordingly find additional reason for taking jurisdiction.

## ESPINOZA'S ARGUMENTS

Espinoza first argues that the quadrant B policy violates Rule 17.4. Rule 17.4's relevant parts are as follows:

(a) Plea Negotiations. The parties may negotiate concerning, and reach an agreement on, any aspect of the disposition of the case. The court shall not participate in any such negotiation.

   .    .    .   . .   .

(d) Acceptance of Plea. After making such determinations [as required under 17.4(c)] and considering the victim's view, the court shall either accept or reject the tendered negotiated plea. The court shall not be bound by any provision in the plea agreement regarding the sentence or the term and conditions of probation to be imposed, if, after accepting the agreement and reviewing a presentence report, it rejects the provision as inappropriate.

(e) Rejection of Plea. If an agreement or any provision thereof is rejected by the court, it shall give the defendant an opportunity to withdraw his plea, advising him that if he permits his plea to stand, the disposition of the case may be less favorable to him than that contemplated by the agreement.

His four-part argument on this issue is summarized as follows:

1) Under Rule 17.4(a), parties are allowed to negotiate and agree upon "any" aspect of a criminal case under Rule 17.4(a), which, in his view, includes reaching binding sentencing stipulations.

2) After an initial acceptance of the plea and a review of the presentence report, judges have the power to reject a sentence as inappropriate under Rule 17.4(d). Because judicial discretion in sentencing includes this authority to reject an inappropriate sentence, *a priori* rejection of a plea merely because of a stipulated sentence is, in his view, an abuse of judicial discretion.

3) A criminal defendant may withdraw from a plea only if the court rejects a provision of the plea. To Espinoza, a judge's decision to dishonor a sentence stipulation deprives a defendant the opportunity of withdrawing from his plea. In his view, the quadrant B policy circumvents the defendant's "protection" to withdraw under Rule 17.4(e).

4) Because the terms of a potential sentence are an important factor in plea negotiations, a judge's *a priori* refusal to impose a stipulated sentence on a defendant, according to Espinoza, interjects the judge into the plea negotiation process in violation of Rule 17.4(a).

Before addressing these varieties of his first argument, we offer these background observations about the roles of the parties in the plea bargaining process.

## DISCUSSION

Plea bargains are no longer an exception in the criminal justice system; rather than trials, plea bargains now constitute the nearly universal way of resolving criminal charges. *See* G. Lowenthal, *Mandatory Sentencing Laws,* 81 Cal.L.R. 61–124 at 85, (1993) (showing that in Maricopa County 96% of criminal charges are now resolved by plea agreement).

The prevalence of plea bargaining and its usurpation of the right to trial have raised

both constitutional and practical concerns. A recent report on the Arizona criminal justice system focuses in part on problems with stipulated sentences in plea agreements. *See* Hon. Barry G. Silverman, Chairman, *A System in Crisis: The Report of the Committee to Study the Criminal Justice System in the Arizona Superior Court*, Draft at 26–33 (June 15, 1993). Addressing the plea bargain climate, the report states that:

> The criminal justice system today bears more resemblance to a middle eastern marketplace than a thoughtful system for determining the truth. Plea bargaining has replaced adjudication. This unfortunate phenomenon permeates the entire criminal justice process but is manifested most dramatically at the time of sentencing.

*Id.* at 28.

This report noted that, as of 1993, the terms of most sentences in plea agreements were dickered over by defendants and counsel and then presented to the court as a *fait accompli*.

In another era:

> a judge would carefully and sagaciously evaluate all the circumstances of the crime, the defendant's previous record, his statements to the court at the time of sentencing, the needs of the victim and society, and then thoughtfully impose a sentence within the range prescribed by the legislature.

*Id.* at 28–29.

Today, however, defendants now typically negotiate their sentences in advance of judicial sentencing—in the hallway, in the holding cell, over the phone—and then appear in court with their binding contract in hand, expecting the judge to acquiesce in the sentence the lawyers chose for them. In such a system the sentencing judge is relegated to the "ministerial formality" of echoing the sentence bargained-for by others. *Id.* at 29.

Those members of the committee critical of this practice concluded that:

> [S]entences thus imposed greatly reduce their punitive and rehabilitative impact. The obvious lesson of such a [stipulated] sentence is that punishment can be reduced or even avoided by skillful negotiation. That lesson is 180–degrees askew of the one which could have been taught had the very same sentence been meted out by the court in a judicious, meaningful way.

*Id.*

Judicial recourse to the lawyers about the propriety of the stipulated sentence is not likely to be helpful. Asking the lawyers about the propriety of the sentence they selected matches asking a salesperson whether the price for merchandise is good.

While some judges regularly do acquiesce in the sentencing stipulations negotiated by the prosecutor and the defendant, Arizona law allows its judiciary to choose, if it wishes, to play a more active role in sentencing. Article 3 of the Arizona Constitution embodies the doctrine of separation of powers:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Many of the basic principles of separation of powers appear in *State v. Ramsey*, 171 Ariz. 409, 412–13, 831 P.2d 408, 411–12 (App. 1992):

> This article mandates that each department act with the powers and functions properly belonging to it and that it not encroach on the power and functions delegated to the other departments.
>
> The separation of powers doctrine is fundamental to constitutional government. The time-honored doctrinal limitations are necessary to protect one department from overreaching actions by another....
>
> The legislative department ... has the power to prescribe punishment for that

[criminal] conduct. The executive department has the power to enforce the law. As such, the prosecutor is properly vested with both the power to charge an individual accused of criminal conduct and the discretion to proceed to trial once a criminal action has been filed. The judicial department has the integral function of resolving criminal actions: [W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility.

(Citations and quotations omitted.)

█ This power to "resolve" criminal actions includes the power to exercise the sentencing authority provided to the courts by the constitution and the legislature. The legislature cannot limit the court's exercise of sentencing authority by transferring the sentencing power to the executive branch. *State v. Prentiss,* 163 Ariz. 81, 85, 786 P.2d 932, 936 (1989); *State v. Dykes,* 163 Ariz. 581, 584, 789 P.2d 1082, 1085 (App.1990); *State v. Garcia,* 176 Ariz. 231, 234, 860 P.2d 498, 501 (App.1993).

Although the legislature sets generic sentencing ranges as it establishes criminal penalties, sentencing of individual defendants remains a judicial function. The discretion to impose an individual sentence is essentially judicial rather than legislative or prosecutorial in nature because of the dual needs of impartiality and individuality. Nothing in Rule 17.4 expressly removes or weakens that authority.

### First Argument

█ We turn to Espinoza's arguments. His first argument that the quadrant B policy conflicts with Rule 17.4 asks us both to interpret narrowly and to embellish the rule. We refuse to do either. We address each of the four parts of his first argument.

1) The language in Rule 17.4(a), allowing the parties to "negotiate" and "agree" upon any aspect of the case, does not give the parties or the lawyers the right to force unwilling judges to accept plea agreements with sentence stipulations. There is no such language in the rule. We do not read the rule's reference to "negotiate" and "agree" to transfer the sentencing power of the judiciary to the lawyers or to require that the court agree with the lawyers' proposed sentence. To read the rule in that fashion would reduce judicial sentencing to a mere concurrence on one hand or, on the other, to a mere veto power over the sentencing decision of others.

This court has previously expressed its concern that a legislative transfer of traditional judicial sentencing to the executive branch violates the separation of powers provision of our state constitution. In *Dykes,* 163 Ariz. at 584, 789 P.2d at 1085, we noted:

A legislative enactment which unreasonably limits or hampers the judicial function violates the separation of powers doctrine embodied in Article 3. This means that the legislature cannot give the prosecuting attorney the authority, after a conviction, to decide what the punishment shall be. That is a judicial function.... [T]he decision to mitigate a sentence belongs to the judge and not the prosecutor.

While the prosecutor may participate in the sentencing proceedings, such as by the presentation of aggravating circumstances, the prosecutor may not control or decide what the punishment shall be.

(Citations and quotations omitted.)

In *State v. Barger,* 167 Ariz. 563, 570, 810 P.2d 191, 198 (App.1990) we expressed a related concern that

a junior officer in the executive branch of county government (deputy county attorney) is given great discretion and power to affect sentencing in a state court while denying to the state judicial officer who presides over that court any discretion in what has traditionally and inherently been a function of the court.

The prosecutor already has broad and un-reviewable discretion in deciding what charges to file and whether and what plea or sentence bargain will be offered. Adding binding sentencing power over and above these powers creates the potential for abuse by allowing the parties to set their own sentences at whim, thereby reducing judges to what the *Bowers*'s judge termed a "shill," with nothing more to do than adopt or veto the sentence crafted by another branch of government. *See Bowers*, 173 Ariz. at 37, 839 P.2d at 457. Judicial sentencing requires more than rubber-stamping or vetoing decisions made in a separate branch of government. "Law is the *art* of governance by rules, not just an automated machinery of enforcement." R. Posner, *Law and Literature*, 109 (1988).

We conclude that Rule 17.4(a) does not force an unwilling court to accept a plea agreement containing sentence stipulations.

■ 2) We also disagree with Espinoza's second Rule 17.4 argument that a judge's discretion remains intact because the judge can always reject a sentence stipulation as inappropriate under Rule 17.4(d). This rule only applies after a judge accepts the plea agreement and then, after reviewing the pre-sentence report, finds the sentence inappropriate, in which case the defendant is entitled not only to withdraw but also to a change of judge. A court may also reject a plea containing sentencing stipulations without waiting for a probation report. As we stated in *Bowers*:

> Although Rule 17 allows the parties to agree to a stipulated sentence, it does not require that a trial court must accept a plea that contains such a provision and proceed in accordance with the terms of the plea subject only to the parties' opportunity to withdraw if the court deviates from the stipulated sentence.

173 Ariz. at 40, 839 P.2d at 460.

The *Bowers* court recognized that reducing a sentencing judge to a mere rubber stamp puts a significant limitation on sentencing discretion:

> The trial court indicated its displeasure with the fact that the prosecutor had bargained away the court's discretion. We will not find that this judge abused his discretion by aggressively protecting the judicial authority over sentencing afforded to him by our statutory scheme. The court, in remarking on the effects of the stipulated sentence, was attempting to preserve "that sharp separation of powers" necessary to prevent one branch of government from encroaching upon functions properly belonging to the other.... We will not read Rule 17.4 so narrowly that it prevents this discretion. *Id.*

Similarly, Rule 17.4(d) applies when the judge initially accepts the plea agreement and later discovers in the pre-sentence report that it would be inappropriate. Nothing in (d) makes it an abuse of discretion for a judge to make an initial rejection of the plea because of its stipulated sentence. Indeed, at the time of a plea, judges often find it difficult if not impossible to assess the propriety of any sentence without the helpful history provided by a pre-sentence report, which typically comes to a judge weeks after a change of plea.

■ 3) Espinoza's third Rule 17.4 argument, as we understand it, is that the quadrant B policy circumvents Rule 17.4(e)'s protection of a defendant's right to withdraw from the plea. However, nothing in the rule allows a defendant to withdraw from a plea merely because a thinking judge exercises discretion to personally fix a sentence within the allowable range. Such a result would turn judges into potted plants. By contrast, the quadrant B policy avoids subordinating judges to sentencing "deals" concocted by prosecutors and defense counsel who, at the time of their plea agreement, typically lack the detailed factual background provided by the probation department's pre-sentence report.

4) Espinoza further argues that the quadrant B policy indirectly interjects judges into the plea negotiation process. We do not see that happening at all. A judge who rejects a plea because it contains a sentence stipulation merely rejects an attempt to dictate judicial sentencing. To do so does not interject the judge into plea negotiations, which remain an option to the parties. As in the instant case, if the judge decides to exercise this discretion but does not otherwise become involved in the negotiation process, the judge does not violate Rule 17.4 because the parties remain free to negotiate but not to stipulate.

■ In sum, while the prosecutor and the defendant have broad latitude under the rule to "negotiate," they lack the authority to usurp judicial sentencing. Of course, as noted in *A System in Crisis*, "the court should take account of the views of the prosecution and defense in reaching a sentencing decision. A joint recommendation for probation, for example, should be given great weight." But sentencing decisions rest ultimately with the judge who has the option to choose to keep hands untied and eyes open regarding the appropriate sentence, particularly when the defendant's crime and background are unknown to the court at the time of the guilty plea.

We recognize that some judges honor stipulated sentences in plea agreements. This practice does not violate the separation of powers when thoughtful judges find the sentencing provisions appropriate in the light of the pre-sentence report or other background information.[1] However, an unwilling judge is not required to accept plea bargains containing sentence stipulations. A judge who rejects a plea agreement with a sentence stipulation properly exercises the constitutional authority granted to the judiciary to fix a sentence as a matter of reflective thought.

### Second Argument

■ The second general issue raised by Espinoza is that the quadrant B policy establishes an unauthorized local rule of procedure. This contention is meritless. The policy is not inconsistent with the criminal rules of procedure nor does the quadrant B policy constitute a universal rule. As discussed above, the policy does not conflict with the Arizona Rules of Criminal Procedure but parallels the court's constitutional authority over individual sentences.

Furthermore, the policy does not constitute a special rule. *See Hare v. Superior Court*, 133 Ariz. 540, 652 P.2d 1387 (1982), and *State v. City Court of City of Tucson*, 150 Ariz. 99, 722 P.2d 267 (1986). The Arizona Supreme Court, of course, has the exclusive power to make procedural rules applicable to any court, Ariz. Const. art. VI, § 5; Rule 36 of the Arizona Rules of Criminal Procedure. Our Supreme Court has defined a rule of procedure as a doctrine or policy that "prescribes a procedural course of conduct that litigants are required to follow," where the failure to comply with the rule "may deprive the parties of substantial rights." *Hare*, 133 Ariz. at 542, 652 P.2d at

---

1. *A System in Crisis* cites the complaint of an anonymous judge to the effect that a steady staccato of stipulated sentences tends to induce judicial numbness instead of thought:

   ·It is the 'rubber stamp' effect ... [I]n part because of a crushing criminal calendar, judges are strongly inclined to go along with the stipulated sentence rather than to rethink sentencing, vacate the plea, and reassign the case. The rubber stamp mentality reduces judges to ministerial officers who simply "sign off" on a sentence negotiated by counsel. The result is that judges are inclined to do very little thinking of their own regarding the propriety of the stipulated sentence.

   There's a resulting disrespect for the court stemming from the public's perception that it is the elected judge rather than the attorneys who should be primarily responsible for sentencing and the reflection necessary for an intelligent sentence. If the public became aware that stipulated sentences are negotiated and constructed by attorneys rather than by judges, the public's perception might result in an even greater disrespect for the criminal justice system, i.e., the public wants elected judges rather than lawyers to run the court. *Id.* at 30–31.

   This view recalls T.S. Eliot's observation that "a tradition without intelligence is not worth having."

1389. In *Hare,* the Supreme Court invalidated a Pima County Superior Court policy that prohibited the acceptance of all guilty pleas after the first trial date, except for pleas to the charges. The policy was held invalid because 1) it had not been approved by the Supreme Court, and 2) it imposed a time limitation on the parties' procedural right to engage in plea negotiations contrary to Rule 17.4. *Id.*

Likewise in *State v. City Court,* where a chief city magistrate required all prosecutors to file an avowal of good faith when striking a magistrate under Rule 10.2 of the Arizona Rules of Criminal Procedure, the Supreme Court held the order invalid as an unauthorized local rule because 1) it set a course of conduct contrary to the Arizona Rules of Criminal Procedure, and 2) the order created a penalty for its violation. 150 Ariz. at 100–103, 722 P.2d at 268–271.

Unlike these cases, the policy challenged by Espinoza does not rise to the level of a procedural rule because it does not prescribe one course of conduct that litigants must follow. The policy does not impose time or penalty constraints, nor deprive defendants of any right, nor does it run counter to any of the Arizona Rules of Criminal Procedure. Rejecting a stipulated sentence does not interfere with the parties' ability to negotiate a plea or even to recommend a sentence.

■ The policy also does not deprive any of the parties of a substantial right as a penalty for its violation. In *Hare,* the guideline prohibited the parties from entering into a plea agreement after a certain trial date. In *State v. City Court,* the prosecutor was penalized for violation of the rule by denial of the procedural right conferred by Rule 10.2. In the instant case, if Espinoza desires to enter a plea with respect to any factor short of a stipulated sentence, he may do so. A defendant, however, has no right to a plea bargain in general, *State v. Morse,* 127 Ariz.

25, 31, 617 P.2d 1141, 1147 (1980), nor to any specific provision in it. Nor does a defendant have a right to be sentenced by the attorneys handling his case.

*Third Argument*

■ As to his third general issue, Espinoza contends that because the policy only applies to those criminal defendants in quadrant B, he has been denied equal protection under the Fourteenth Amendment of the United States Constitution. We find this claim equally meritless.

■ Equal protection guarantees like treatment to all persons who are similarly situated; it does not, however, deny a state the power to treat different classes of people in different ways as long as the classification is reasonable. *State v. Beckerman,* 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App.1991). Espinoza has not claimed that the quadrant B policy was applied to him on some arbitrary, unjustifiable basis. He merely claims that no compelling reason exists for the policy. As discussed above, the authority to sentence lies with the judge, not the attorneys.[2] No fundamental right of the criminal defendant is involved nor is there any violation of the equal protection clause because there is no constitutional right to a plea bargain or to a certain sentence. *See Morse,* 127 Ariz. 25, 617 P.2d 1141. A court may adopt a policy of rejecting all pleas that restrict its sentencing authority, or, alternatively, it may exercise its discretion to accept some agreements and reject others, provided that in each case the court makes a reflective assessment that the imposed sentence is appropriate for a known defendant.

CONCLUSION

For the foregoing reasons, we hold that the policy of declining plea bargains containing sentencing stipulations is a proper exercise of that judicial authority which resides at the heart of what Sir Edward Coke long ago called "the gladsome light of jurisprudence."

**2.** Confucius once said that if he became Emperor the first thing he would do would be to restore the true names to important functions such as "judging."

Relief from the trial court's order is accordingly denied.

GRANT and FOREMAN **, JJ., concur.