STATE of Minnesota, Respondent,

v.

Allen ERICKSON and Forrest Scott Verhoeff, Appellants.

No. C6–98–1236.

Supreme Court of Minnesota.

March 4, 1999.

John E. Mack, Mack & Daby, New London, for appellant.

Boyd Beccue, Kandiyohi County Attorney, Willmar, Michael Hatch, Robert A. Stanich, St. Paul, for respondent.

John M. Stuart, Minnesota State Public Defender, Lawrence Hammerling, Minneapolis, amicus curiae.

## OPINION

GILBERT, J.

This case, before us on interlocutory appeal, involves the Kandiyohi County Attorney's Office's blanket exercise of Minn. R.Crim. P. 26.03, subd. 13(4), on substantially all of the county's criminal cases. The rule allows a defendant or prosecuting attorney to peremptorily remove a judge. Since 1994, the County Attorney's Office has filed notices to remove the Honorable John C. Lindstrom in a vast majority of criminal cases prosecuted by that office and assigned to Judge Lindstrom. This is a rare use of this rule and a case of first impression in Minnesota. We conclude that such blanket filings are an unwarranted use of Minn. R.Crim. P. 26.03, subd. 13(4), and constitute an abuse of this rule. We therefore reverse the lower courts and remand the cases to Judge Lindstrom.

In October 1997, appellant Allen Erickson was arrested and charged with several counts of gross misdemeanor driving while intoxicated in violation of Minn.Stat. § 169.121 (1998), and with one count of driving after suspension of his driver's license in violation of Minn.Stat. § 171.24 (1998). Appellant Forrest Scott Verhoeff was arrested in December 1997, and was charged with several counts of gross misdemeanor driving while intoxicated in violation of Minn.Stat. § 169.121, and with one count of driving after revocation of his driver's license in violation of Minn.Stat. § 171.24.

Both cases were prosecuted in Kandiyohi County by the Kandiyohi County Attorney's Office and both were assigned to Judge Lindstrom. The County Attorney's Office filed timely notices of removal against Judge Lindstrom pursuant to Minn. R.Crim. P. 26.03, subd. 13(4). In response, the appellants filed a joint motion to prohibit the removal of Judge Lindstrom. The basis of the appellants' motion was not only to contest the removals of Judge Lindstrom in their own cases, but also to challenge the County Attorney's Office's policy of removing Judge Lindstrom from nearly all criminal cases to which he was assigned.

The Kandiyohi County Attorney's Office began its official policy of routinely removing Judge Lindstrom from criminal cases in 1994. The practice resulted from the County Attorney's Office's dissatisfaction with Judge Lindstrom's ruling in a juvenile criminal case, which ruling was the result of a credibility determination. Shortly thereafter, the Willmar City Attorney's Office initiated the same blanket filing practice, and both offices have routinely removed Judge Lindstrom from 1994 to the present. Judge Lindstrom has served with distinction as a trial court judge since July 1, 1976. The issue of blanket filings arose only after Judge Lindstrom made an adverse ruling on the above juvenile case.

From January 1, 1994 to August 20, 1997, Judge Lindstrom was assigned to 254 felony and gross misdemeanor cases. The County Attorney's Office filed notices of removal in 161 of those cases, while the Willmar City Attorney did so in 27 cases. During that time period, only one other litigant removed Judge Lindstrom from a criminal case. Thus, Judge Lindstrom was removed from 188 out of 254 felony and gross misdemeanor cases over a 3–1/2 year period.

Similarly, from January 1, 1995 to August 20, 1997, Judge Lindstrom was assigned to 334 misdemeanor cases. The County Attorney's Office filed notices of removal in 73 of those cases, while the Willmar City Attorney did so in 167 cases. No other litigant removed Judge Lindstrom from a criminal case during that time period. Thus, Judge Lind-

strom was removed from 240 of 334 misdemeanor cases during the 2–1/2 year period.

Concerned by this continuing practice, the appellants filed their motion objecting to the removal of Judge Lindstrom. The motion was heard before the chief judge of the Eighth Judicial District, the Honorable Bruce Christopherson. Judge Christopherson took judicial notice of additional statistics, stating that from May 20, 1998 through June 19, 1998, the County Attorney's Office removed Judge Lindstrom in five of the seven criminal cases to which he was assigned. Judge Christopherson expressed concern about the "long and complicated" history of the County Attorney's removal policy that formed the basis of the appellants' motion, and detailed prior attempts to deal with the abundant removal notices.

Shortly after the prosecutors began filing repeated notices to remove Judge Lindstrom from criminal cases, the Court Administrator of Kandiyohi County attempted to deal with the disruption caused by the notices by not assigning Judge Lindstrom to criminal cases. However, the Court Administrator ceased this policy after other litigants complained that the new policy allowed the County Attorney's Office, in essence, to remove two judges, since Judge Lindstrom was effectively removed by the Court Administrator's failure to assign him criminal cases, while the County Attorney's Office still retained the ability to remove the assigned judge pursuant to Minn. R.Crim. P. 26.03, subd. 13(4).

Judge Lindstrom himself objected to the repeated notices of removal filed by the County Attorney's Office. In 1995, Judge Lindstrom refused to remove himself from four cases after the County Attorney's Office filed notices of removal. The County Attorney filed petitions for writs of prohibition, which the court of appeals granted. The Court Administrator then implemented a new policy whereby litigants were not informed of the assigned judge until the time of the hearing at which the judge was to preside. In response to objections, the Court Administrator reversed this policy.

After thorough review of all of the law and facts surrounding this case, including court caseload records, Judge Christopherson de-nied the appellants' motion. He held that Minn. R.Crim. P. 26.03, subd. 13(4), was not unconstitutional either on its face or as applied by the Kandiyohi County Attorney's Office. While expressing hope that the notices to remove would be "used sparingly" in the future, Judge Christopherson cited judicial restraint in choosing not to implement sanctions against the County Attorney's Office for abuse of the rule.

The court of appeals denied the appellants' petition for discretionary review. We granted review in order to address the County Attorney's Office's repeated filing of removal notices against Judge Lindstrom pursuant to Minn. R.Crim. P. 26.03, subd. 13(4). There have been some previous uses of blanket removals by prosecutors in the Twin Cities metropolitan area, but those cases were resolved before reaching us. We granted review in this case because the impact of a blanket filing on any judge is an issue of statewide importance to the administration of justice.

We are not the first court to be confronted with an abuse of a removal rule. In *State v. City Court of the City of Tucson*, 150 Ariz. 99, 722 P.2d 267 (1986), the Arizona Supreme Court considered an abuse of a removal rule that allowed a city prosecutor to disqualify a judge peremptorily. *Id.* at 101, 722 P.2d at 269. The city prosecutor implemented an office policy requiring use of the rule to remove a magistrate from all driving under the influence cases. *Id.* at 100, 722 P.2d at 268. The city prosecutor candidly informed the magistrate that the removals were an attempt to "re-educate" her. *Id.* at 101, 722 P.2d at 269. The court held that the prosecutor's use of the rule was "an abuse of the rules and a threat to the independence and integrity of the judiciary which cannot be allowed." *Id.* at 102–03, 722 P.2d at 270–71. The court then stated that "[t]he Supreme Court has the rule-making power for all courts in the state. * * * This rule-making power allows the court to monitor the use of its rules and encompasses the power to suspend the application of the rules where the ends of justice require." *Id.* at 104, 722 P.2d at 272 (internal citations omitted). The court then held that, as to future cases:

[I]f the City Prosecutor does not terminate his policy of peremptorily challenging [the judge] in all DWI cases, then we will be forced to suspend indefinitely the availability of [the rule] to the City Prosecutor until such time as we are satisfied that the rule is not being abused by the City Prosecutor or his deputies.

*Id.*

The Arizona Supreme Court's concerns were warranted, considering the broad impact of blanket filings, which affect not only the specific cases at issue, but also the cases of many of our other citizens that are pending at the same time. This is true particularly in greater Minnesota, where the judges needed to handle reassignments are farther apart. In Kandiyohi County, for example, there were 11,558 cases filed in 1998. When a judge is removed from a case, another judge must be assigned to the case, thereby affecting the caseload of both judges. Where, as in Kandiyohi County, only three judges are generally assigned to handle the continually increasing volume of cases, the efficient utilization of judicial resources is greatly impacted by blanket filings.

The ability of a litigant to remove a judge is an important principle and has a lengthy history in Minnesota. Under the common law there was no such right in general, though certain removal rights were established where actual conflicts of interests were apparent. Prior to 1885, a judge could be removed from a case only for a pecuniary interest in the case. *See State v. Gardiner,* 88 Minn. 130, 134, 92 N.W. 529, 531 (1902). Over 90 years ago, in 1905, the legislature first expanded the grounds for removal in a criminal action to allow a litigant to file an "affidavit of prejudice." This required the litigant to allege that he was unable to receive a fair trial before the judge due to prejudice or bias. *See State v. Kraska,* 294 Minn. 540, 201 N.W.2d 742 (Minn.1972). The legislature again expanded the ability of a litigant to remove a judge in 1978, when it enacted Minn.Stat. § 542.16 (1998). Section 542.16 is similar to Minn. R.Crim. P. 26.03, subd. 13(4), in that it allows a litigant to file one notice of removal with no requirement of

a showing, or even an allegation, of bias or prejudice. Minn.Stat. § 542.16.

Minnesota Statutes section 542.16 was superceded in 1989 by Minn. R.Crim. P. 26.03, subd. 13(4), which provides:

The defendant or the prosecuting attorney may serve on the other party and file with the court administrator a notice to remove the judge assigned to a trial or hearing. The notice shall be served and filed within seven (7) days after the party receives notice of which judge is to preside at the trial or hearing, but not later than the commencement of the trial or hearing. * * * After a party has once disqualified a presiding judge as a matter of right, that party may disqualify the substitute judge only upon an affirmative showing of cause.

The rule further provides that following the removal of the judge, "the chief judge of the judicial district shall assign any other judge within the district to hear the matter." Minn. R.Crim. P. 26.03, subd. 13(6).

■ Ensuring all litigants a fair trial is a central goal of the judiciary. We adopted Minn. R.Crim. P. 26.03, subd. 13(4), to further this goal. As the Wisconsin Supreme Court stated, a rule such as Minn. R.Crim. P. 26.03, subd. 13(4), is:

a commendable procedure to protect the defendant's right to a fair trial, to protect the judge from having his or her impartiality unfairly impugned, to avoid having the lawyer file an affidavit of prejudice without having guidelines as to the proper use of the affidavit, and to promote the bench's and public's interest in preserving confidence in the judiciary.

*State v. Holmes,* 106 Wis.2d 31, 315 N.W.2d 703, 717 (1982).

Minn. R.Crim. P. 26.03, subd. 13(4), grants to litigants the privilege of using the rule once summarily in a case without having to give a reason for removing a judge. The Kandiyohi County Attorney's Office has repeatedly used the rule to pursue its own goals on virtually all criminal cases in the county. The County Attorney started this practice not because of any claimed misconduct, but in response to an adverse ruling by Judge Lindstrom. Such use of the rule does

nothing to further the spirit of the rule, but instead strikes at the very heart of judicial independence, which is so essential in a free society. The misuse of Minn. R.Crim. P. 26.03, subd. 13(4), by the County Attorney's Office sends the clear message that dissatisfaction with a judge's rulings will result in removal of that judge from virtually all similar cases.

■ A prosecutor holds a unique and powerful position in a democratic society. We have previously recognized this role and held that a prosecutor is a "minister of justice," and thus his job is to seek justice rather than convictions. *See State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993). "Since the prosecutor bears a large share of the responsibility for determining which cases are taken into the courts, the character, quality, and efficiency of the whole system is shaped in great measure by the manner in which the prosecutor exercises his or her broad discretionary powers." ABA Standards for Criminal Justice: The Prosecution Function and Defense Function, 3-1.2, cmt. (3d ed.1993). The County Attorney's Office's excessive use of Minn. R.Crim. P. 26.03, subd. 13(4), is prejudicial to the administration of justice and contrary to the spirit of the rule.

Although the appellants assert that the rule is unconstitutional, we do not need to reach this issue. *See In re Senty–Haugen*, 583 N.W.2d 266, 269 n. 3 (Minn.1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise."). Here we have a significant conflict between the spirit of the rule and the use of the rule. Accordingly, the resolution of this issue is more appropriately and adequately remedied through an exercise of our inherent power.

■ The inherent power of this court includes "the right to enable [the court] to administer justice whether any previous form of remedy has been granted or not." *In re Clerk of Lyon County Court's Compensation*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976) (quoting *In re Greathouse*, 189 Minn. 51, 55, 248 N.W. 735, 737 (1933)). We have previously stated that:

Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court. * * * Its scope is the practical necessity of ensuring the free and full exercise of the court's vital function—the disposition of individual cases to deliver remedies for wrongs and "justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws."

*Clerk of Lyon County*, 308 Minn. at 176–77, 241 N.W.2d at 784 (internal citations and quotations omitted). Our inherent power encompasses the power to enact rules of practice. *See* Minn.Stat. § 480.059 (1998); *Clerk of Lyon County*, 308 Minn. at 176, 241 N.W.2d at 786. Included in this power is the authority to suspend the exercise of those rules where appropriate to ensure the proper administration of justice. *See, e.g., City Court of Tucson*, at 104, 722 P.2d at 272.

■ In accordance with our inherent authority to ensure the proper administration of justice, we will not allow the prosecutor's abuse of this rule to continue. We therefore reverse the lower courts and remand these cases to the trial court and order Judge Lindstrom reinstated on the cases presently before us, subject only to the County Attorney's Office's right to remove Judge Lindstrom upon a showing of cause pursuant to Minn. R.Crim. P. 26.03, subd. 13(3). We also suspend the privilege of the Kandiyohi County Attorney's Office to use Minn. R.Crim. P. 26.03, subd. 13(4), for a period of six months following the date of the filing of this opinion.

Furthermore, we refer the matter of blanket filings to the Advisory Committee on Rules of Criminal Procedure for further study and consideration.

Reversed and remanded.

PAUL H. ANDERSON (concurring in part and dissenting in part),

I concur with most of the majority's opinion, but dissent in part because of my colleagues' conclusion that it is necessary to temporarily suspend the Kandiyohi County Attorney's privilege to use Minn. R.Crim. P. 26.03, subd. 13(4). I do not believe that

imposition of this sanction is necessary nor do I believe that it is a proper use of our power to impose any sanction at this point in time.

The majority is correct when it says that the Kandiyohi County Attorney's repeated use of Rule 26 to target Judge Lindstrom for removal was a misuse of the rule and most assuredly violated the intent of the rule. Indeed, this misuse does strike "at the very heart of judicial independence, which is so essential in a free society." As a co-equal branch of government, we have a mandate to be vigilant in our efforts to prevent the erosion of our independence. Today, we are exercising this vigilance by speaking loudly and clearly when we tell the County Attorney that his use of the rule is improper and that we will not tolerate any further misuse.

Whether a prosecutor is a municipal attorney, county attorney, federal district attorney, or special prosecutor, he or she is a "minister of justice" who has an obligation to seek justice rather than convictions at any price. *See State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993). When seeking justice, there is an obligation to follow the rules—both in letter and in spirit. The Kandiyohi County Attorney followed the letter of the rule and thus did not technically violate the rule, but he most assuredly misused it in a manner that violated its spirit and prejudiced the administration of justice. This was wrong and, as an officer of the court and a powerful elected official, he should have perceived that his use of the rule was wrong. But Rule 26 is a rule promulgated by our court. Therefore, if, as drafted, it is open to an interpretation that leads to this type of abuse, we bear some obligation to be tempered in our response when we first clarify the rule and define its proper use.

Prior to today, we have not had the opportunity to address the issue of whether use of the rule to target a particular judge is improper. Furthermore, the Kandiyohi County Attorney is not the first person to misuse the rule in this manner. I am aware of numerous other similar abuses of the rule. I do not know why these other instances of abuse did not come to us for review or why it took so long for the Kandiyohi County Attorney's abuse of the rule to come before us. Nevertheless, we have now spoken on this issue. I have no doubt that, because we have now spoken, the abuse of the rule by the County Attorney will stop. The County Attorney will respect our ruling and in the future will follow the rule. It is wrong for us at this stage in the proceedings to impose a sanction either on the basis of past behavior or based on the assumption that the County Attorney will not follow the rule in the future. Rather, if the County Attorney should continue to misuse the rule, then that will be the proper time for us to use our power to impose sanctions.

For the above-stated reasons, I conclude that a six-month suspension is neither necessary nor warranted. I would reverse the lower courts and remand the two cases before us for hearing before Judge Lindstrom, subject only to the County Attorney's right to remove for good cause. I would not temporarily suspend the County Attorney's privilege to use Minn. R.Crim. P. 26.03, subd. 13(4).