**STATE of Minnesota, Respondent,**

v.

**Mong Danny CHENG, Petitioner, Appellant.**

**No. C5–00–1004.**

Supreme Court of Minnesota.

March 22, 2001.

Rehearing Denied April 19, 2001.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Michael F. Cromett, Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, Susan Gaeetner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

The Ramsey County Attorney charged appellant, Mong Danny Cheng, with four counts of second-degree murder in connection with a July 1999 drive-by shooting in Saint Paul. Following a probable cause hearing, a Ramsey County District Court judge was assigned to handle Cheng's trial and all further proceedings in the case. After failed plea negotiations, Cheng appeared in court and attempted to plead guilty to second-degree murder, which the court concluded he could do. Rather than allowing Cheng to plead guilty, the county attorney dismissed the charges and Cheng was released.

A month later, a Ramsey County grand jury indicted Cheng for first-degree murder, together with five other lesser counts arising out of the July 1999 shooting. The case was then reassigned to the same judge. The county attorney filed a notice to remove this judge under Minn. R.Crim. P. 26.03, subd. 13(4) [1], but the judge ruled that the notice to remove her was not timely filed because she already had ruled on substantive issues. The county attorney then petitioned the Minnesota Court of Appeals for a writ of prohibition prohibiting the assigned judge from hearing the case and a writ of mandamus requiring the Chief Judge of the Ramsey County District Court to reassign the case. The court of appeals issued a writ of prohibi-

---

1. The state actually filed its notice to remove pursuant to Minn.Stat. § 542.16 (1998) although its legal arguments are based on the notice to remove provisions in Minn. R.Crim. P. 26.03, subd. 13(4). The criminal notice to remove provisions are properly governed by Minn. R.Crim. P. 26.03, subd. 13(4), which supercedes the criminal removal provisions in Minn.Stat. § 542.16. *State v. Azure,* 621 N.W.2d 721, 724 (Minn.2001). Therefore, we will refer to the rule.

tion as requested. We reverse, vacate the writ of prohibition, and remand.

Shortly after midnight on July 22, 1999, Peter Xiong and a group of other persons were sitting outside a Saint Paul residence. A minivan slowly approached the group and eight to ten shots were fired at the group from inside the minivan. The minivan then sped off. Peter Xiong was killed by a gunshot to the chest and four other persons were taken to the hospital with injuries from the gunfire. A confidential informant notified the Minnesota Gang Strike Force that appellant Mong Danny Cheng was one of the individuals involved in the shooting. After further investigation, Cheng was charged with four counts of second-degree murder in connection with Xiong's death.[2] Cheng was arraigned on December 1, 1999, before Ramsey County District Court Judge Louise Dovre Bjorkman and on December 28 Cheng entered a not guilty plea at a probable cause hearing presided over by Judge Dale B. Lindman.

On January 6, 2000, Judge Judith M. Tilsen was assigned to handle all further proceedings involving the charges against Cheng, including trial. Neither party filed a notice to remove Judge Tilsen upon receiving notification of her assignment to the case. On March 9, 2000, a dispositional conference was held before Judge Tilsen. At this hearing, only scheduling matters were dealt with on the record; however, the parties acknowledge that other matters were discussed. In particular, Cheng claims that at this hearing the state gave notice of an intent to proceed to the grand jury to obtain a first-degree

murder indictment. The next day, the state contacted Cheng's counsel and discussed a plea agreement in which Cheng would plead guilty to one count of second-degree murder and receive a sentence at the low end of the guidelines range. The state also indicated that Cheng's counsel would be free to discuss a sentence departure with the judge. After receipt of this offer, Cheng's attorney expressed an intent to accept the plea agreement. On March 22, an assistant county attorney and Cheng's attorney met with Judge Tilsen in her chambers to discuss resolution of the case. Cheng asserts that at this meeting the state restated its earlier offer to permit him to plead guilty to the most serious count on the complaint. He also asserts·that the state agreed to recommend a sentence of 331 months, but that Cheng's counsel could request a downward departure. No record was made of this conference.

On March 30, Cheng appeared at a hearing before Judge Tilsen, but the state was not present so the question of the plea was continued. Later that same day, the state informed Cheng's counsel that it would counter any request by Cheng for a downward departure in sentencing by asking for an upward departure, but that it might still agree to a guidelines sentence. Five days later, the state informed Cheng's counsel that it would no longer accept a guilty plea to second-degree murder and instead intended to seek a first-degree murder indictment from the grand jury.[3]

The next day, April 5, Cheng appeared before Judge Tilsen and indicated that he was prepared to "plead guilty to the top

---

2. Count I was murder in the second degree in violation of Minn.Stat. §§ 609.19, subd. 1(1) (2000), and 609.11, subd. 5 (2000). Count II was murder in the second degree-crime committed for the benefit of a gang-in violation of Minn.Stat. §§ 609.19, subd. 1(2) (2000), 609.11, subd. 5, and 609.229 (2000). Count III was murder in the second degree-drive-by shooting-in violation of Minn.Stat. §§ 609.19, subd. 1(1), and 609.11, subd. 5. Count IV was murder in the second degree-drive-by shooting committed for the benefit of a gang-in

violation of Minn.Stat. §§ 609.19, subd. 1(2), 609.11, subd. 5, and 609.229. All four counts were based on Peter Xiong's death and all were charged as aiding and abetting crimes under Minn.Stat. § 609.05 (2000).

3. On appeal the state maintains that conversations about possible plea agreements were only negotiations, but that if an offer had been extended, the state had the right to withdraw it.

count of the complaint, murder in the second degree, crime benefiting a gang, and that he would receive a guideline sentence for the low end of the box of 331 months." An assistant county attorney was present and indicated that the state was not prepared to accept a plea on any count. After first indicating that there had been extensive discussions off the record, Judge Tilsen ruled that under Minn. R.Crim. P. 8.01, Cheng "can plead to the charges, straight plea, at any time." Judge Tilsen asked Cheng's attorney if it was Cheng's intention to plead to the charges and she indicated that it was. However, before Cheng could enter a guilty plea, the state dismissed the charges against him and the court ordered him to be released. Judge Tilsen then gave a narrative explaining why, but for the dismissal, she would have permitted Cheng to plead guilty to second-degree murder. Judge Tilsen explained that because the charge against Cheng was for a homicide, Rule 8.01 requires that the state notify the court of its intent to proceed to the grand jury and that the state must proceed to the grand jury within 14 days of Cheng's appearance under Rule 8. Judge Tilsen went on to explain that the state had negotiated in bad faith with Cheng. On appeal, the state asserts that at this hearing Judge Tilsen refused to grant a continuance so that the state could take the case to a grand jury. However, the state did not make such a request on the record, nor did the state appeal from any such ruling.

On May 3, 2000, Cheng was indicted on six counts arising out of the July 22, 1999 shooting: one count of first-degree murder during a drive-by shooting in violation of Minn.Stat. §§ 609.185, subd. 3 (2000), 609.11, and 609.05; one count of second-degree murder—crime committed for the benefit of a gang—in violation of Minn. Stat. §§ 609.229, 609.11, and 609.05; and four counts of attempted first-degree murder during a drive-by shooting in violation of Minn.Stat. §§ 609.185, subd. 3, 609.17 (2000), 609.11, and 609.05. On May 3,

2000, the case was assigned to Judge Tilsen to handle all further proceedings.

On May 9, 2000, the state filed a notice to remove Judge Tilsen under Minn. R.Crim. P. 26.03, subd. 13(4). The notice to remove was referred to Judge Tilsen for a determination of whether it was timely filed. The judge set the matter for a hearing and requested briefing. Both sides submitted briefs to the court and at a hearing on May 24 were permitted to present oral arguments. At the hearing, Judge Tilsen specifically addressed the state's assertion that she had called the clerk's office and requested that Cheng's new file be assigned to her calendar. Judge Tilsen explained that she had not requested that the case be assigned to her after the indictment issued. She stated that she had contacted the Chief Judge of the Ramsey County District Court prior to the grand jury being convened and asked what would happen if an indictment issued. Judge Tilsen stated that the chief judge informed her that the case would continue to be assigned to her. Judge Tilsen then restated the explanation provided by the chief judge that "when a case is filed by Complaint, an order [is issued] assigning a particular murder case to a particular judge. After indictment is issued, there is no new order. * * * It is assumed to be the same case, assigned to the same judge."

Following this explanation, Judge Tilsen ruled that the notice to remove was not timely filed because she had ruled on substantive issues in the case. Judge Tilsen explained that there had been discussions about "the facts of the case, the possible admission of evidence, the possible negotiations, the possible number of months." Judge Tilsen reiterated her earlier finding that the state had negotiated in bad faith. She also expressed concern about her perception of a pattern in the county attorney's office of not negotiating in good faith, but then clarified that this pattern was not the basis for her decision. Finally, she stated that the obvious reason for the

state's notice of removal was its desire to avoid her earlier substantive rulings on the case. She stated, "I don't think it's a huge jump to say that it is because of this Court's posture and involvement with the case charged by Complaint that the State has now filed a Notice of Removal. So, the issue of whether or not I have ruled on substantive issues is settled. I have."

Following Judge Tilsen's ruling that the notice to remove was not timely filed, the state contacted the district's chief judge by letter to request that he appoint another judge to hear the case. In the letter, the state apprised the chief judge that he had a duty to assign a judge other than Judge Tilsen, that no kind of hearing was permitted on this matter, and that his duty was mandatory, not discretionary. The chief judge denied the state's request, concluding that had the objection been for cause he would have heard · the state's motion.

The state then petitioned the court of appeals for a writ of prohibition forbidding Judge Tilsen from hearing the case and a writ of mandamus requiring the chief judge to assign another judge to hear the case. The court of appeals issued a writ of prohibition as requested. The court concluded that after the indictment Cheng's case was a new proceeding because when the indictment was sought, the state was required to present testimony to the grand jury, which qualified as an evidentiary hearing. *State v. Chang* [sic], No. C5–00–1004, No. C7–00–1005, slip op. at 2 (Minn. App. June 27, 2000).

■ In reaching its holding, the court of appeals followed the reasoning that we have used in civil cases involving removal under Minn. R. Civ. P. 63.03 in which a case is a new proceeding if it requires an evidentiary hearing. *Id.* The court further explained that the state did not dismiss the complaint to avoid Judge Tilsen's rulings, but instead dismissed the complaint so it could present the case to the grand jury. *Id.* The court concluded that any prosecutorial abuse of the rule needed to be ad-

dressed by the supreme court. *Id.* at 2–3. In denying the state's request for a writ of mandamus, the court of appeals concluded that the chief judge properly denied the state's request to reassign the case because it was not a removal for cause. *Id.* at 3. Additionally, the court noted that the writ of prohibition was sufficient to accomplish the state's goal of having the case assigned to another judge. *Id.*

On appeal, Cheng requests that we hold that an indictment for a criminal offense that has been previously charged by complaint is not a new proceeding. He then argues that because the indictment does not create a new proceeding, it cannot revive a lapsed notice to remove a judge without cause or otherwise permit the removal without cause of a judge who has already handled substantive issues in the case. Cheng asserts that the period for filing a notice to remove Judge Tilsen under Minn. R.Crim. P. 26.03, subd. 13(4), expired 7 days after the parties received notice of her January 6, 2000 assignment to the case. Cheng also asserts that Judge Tilsen ruled on substantive issues, such that even if the notice to remove were filed within 7 days, a notice to remove absent a showing of cause would not be effective.

■ We review the issuance of a writ of prohibition by reviewing the underlying issue. *Cf. McClelland v. Pierce,* 376 N.W.2d 217, 219 (Minn.1985) (stating that the question "is not the form of relief but rather the validity of the basis upon which [the relief] was awarded"). Rule 26.03, subd. 13(4), of the Minnesota Rules of Criminal Procedure is the rule that provides for removal as a matter of right of a judge assigned to a criminal trial or hearing. The rule requires that a party seeking removal of a judge without cause must file a notice to remove within 7 days after the party receives notice of which judge is to preside at the trial or hearing. Minn.

R.Crim. P. 26.03, subd. 13(4).[4] The rule also states that such a notice to remove is not effective "against a judge who has already presided at the trial, Omnibus Hearing, or other evidentiary hearing * * *." *Id.* Cheng's appeal turns on the interpretation of this rule of criminal procedure and the interpretation of a court rule is a legal question that we review de novo. *State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn.1998).

■ Our inherent authority to ensure the effective functioning of the judiciary came into existence with the creation of the court. *Clerk of Court's Comp. for Lyon County v. Lyon County Comm'rs*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976). It is under this authority that we enact and interpret the rules of procedure governing our courts. *State v. Johnson*, 514 N.W.2d 551, 553–54 (Minn.1994). The Rules of Criminal Procedure, and specifically Rule 26.03 at issue here, were adopted pursuant to our inherent authority and as such we will interpret the rule in a manner that will ensure the "free and full exercise of the court's vital function * * *." *Clerk of Lyon County*, 308 Minn. at 177, 241 N.W.2d at 784.

■ The relevant part of Rule 26.03, which allows a party to remove a judge without cause, was adopted to further the goal of ensuring a fair trial. *State v. Erickson*, 589 N.W.2d 481, 484 (Minn.1999). While parties maintain the right to remove a judge for cause, the limited ability to remove a judge without cause is important because it operates to " 'protect the judge from having his or her impartiality unfairly impugned, to avoid having the lawyer file an affidavit of prejudice without having guidelines as to the proper use of the affidavit, and to promote the bench's and public's interest in preserving confidence in the judiciary.' " *Id.* at 484 (quoting *State v. Holmes*, 106 Wis.2d 31, 315 N.W.2d 703, 717 (1982)).

■ As was illustrated in *Erickson*, we will narrowly construe the rule allowing for removal without a showing of cause. *Id.* at 485. Relying on civil cases, the court of appeals held that Cheng's indictment following the dismissal of the complaint against him initiated a "new proceeding" to which a new right of removal without cause attaches. We disagree. We conclude that at this stage in the prosecution of Cheng, the right to remove Judge Tilsen without cause is no longer available. The sequence of events that led the state to file a notice to remove Judge Tilsen is such that we conclude that the indictment against Cheng was not a new proceeding for purposes of the removal rule.

Judge Tilsen was assigned to Cheng's case for all further proceedings involving the charges against him, including trial. Neither party attempted to remove the judge within 7 days of their notice of this assignment. Judge Tilsen presided over a dispositional conference, scheduling discussions and extensive plea negotiations. Thereafter, the state notified the court that it intended to seek an indictment from the grand jury. Judge Tilsen appears to have denied the state a continuance to take the case to the grand jury, provided reasons for her decision, and stated her intent to allow Cheng to plead guilty to second-degree murder. Instead of appealing the

---

4. The full text of Minn. R.Crim. P. 26.03, subd. 13(4), reads:

(4) *Notice to Remove.* The defendant or the prosecuting attorney may serve on the other party and file with the court administrator a notice to remove the judge assigned to a trial or hearing. The notice shall be served and filed within seven (7) days after the party receives notice of which judge is to preside at the trial or hearing, but not later than the commencement of the trial or hearing. No notice to remove shall be effective against a judge who has already presided at the trial, Omnibus Hearing, or other evidentiary hearing of which the party had notice, except upon an affirmative showing of cause on the part of the judge. After a party has once disqualified a presiding judge as a matter of right, that party may disqualify the substitute judge only upon an affirmative showing of cause.

judge's decision, the state chose to dismiss the charges, seek an indictment, and then after the indictment was obtained, remove Judge Tilsen without a showing of cause. Under these specific circumstances, the right to remove Judge Tilsen without a showing of cause has expired. We hold that the court of appeals erred when it issued the writ of prohibition; therefore, we reverse the court of appeals, vacate the writ of prohibition, and remand the case to Judge Tilsen for further proceedings consistent with this opinion.

Reversed and remanded.