PER CURIAM.
*87 In this case, we must decide whether the notice to remove an assigned tax court judge was timely, see Minn. R. Civ. P. 63.03 (allowing a notice to remove to be filed within 10 days of notice of the assigned judge), and if so, whether the assigned judge erred in finding that it was impracticable to honor the notice. See Minn. Stat. § 271.06, subd. 7 (2016) (stating that the Rules of Civil Procedure govern tax court procedures "where practicable"). OCC, LLC, a property owner in Hennepin County and petitioner in the Minnesota Tax Court, petitions for a writ of mandamus that directs the tax court to vacate an order that quashed OCC's notice to remove the assigned tax court judge and to honor the notice. Hennepin County, respondent here and in the tax court, opposes the petition. The County argues that OCC's notice to remove was untimely, and based on the facts of this proceeding, the tax court correctly concluded that honoring the notice to remove was not practicable.
We conclude that OCC's notice to remove was timely. We further conclude that the record does not establish that honoring the notice to remove is impracticable in this case. We therefore grant the petition for mandamus, direct the tax court to vacate its order quashing OCC's notice to remove, and direct the tax court to honor that notice by assigning OCC's consolidated tax proceedings to a different judge.
FACTS
OCC, a property owner in Hennepin County, has filed three appeals from Hennepin County's tax assessments for its property, one appeal for each tax year, 2015, 2016, and 2017. See Minn. Stat. § 278.02 (2016) (explaining that each petition challenging a tax assessment must be limited to a single assessment date). In July 2016, the tax court issued a scheduling order in the first case, for tax year 2015, directing OCC and the County to prepare and file a joint statement of the case by May 2017 ("July 2016 Order"). The July 2016 Order, signed by one of the three members of the tax court, notified the parties that the 2015 tax year appeal would be deemed "trial-ready as of September 5, 2017." The Order also informed the parties that after the joint statement was filed, "the tax court administrator will assign a judge, schedule the trial in this matter, and notify the parties of the judge assignment and the trial date."
On May 5, 2017, the parties filed their joint statement of the case in the appeal for the 2015 tax year. The parties also *88 explained that two additional appeals (for the 2016 and 2017 tax years) had been filed for the same property and asked the tax court to consolidate the three cases. Finally, the parties asked the tax court to adopt the schedule in the July 2016 Order as the governing order for the consolidated cases.
On May 11, 2017, the tax court granted the parties' joint request, consolidated the cases "for all further pretrial proceedings and for trial," required the consolidated cases to "proceed under" the July 2016 Order, and notified the parties that the trial-ready date established by the July 2016 Order-September 5, 2017-now applied to the consolidated cases ("May 2017 Order"). The tax court judge who signed the July 2016 Order did not sign the May 2017 Order. Instead, the judge who is the subject of the removal notice signed the May 2017 Order. As of the May 2017 Order, no other hearing and no specific trial date was scheduled in the consolidated cases. And the May 2017 Order did not notify the parties which tax court judge had been assigned to the case.
On August 18, 2017, OCC (through its counsel of record) requested a hearing date from the tax court administrator to address motions in limine. On August 21, 2017, the tax court administrator provided counsel for both parties with dates on which the tax court judge-the same judge who had signed the May 2017 Order-would be available for a hearing on OCC's motions. A hearing date in September was selected.
On August 30, 2017, OCC filed a notice to remove the assigned judge, citing Minn. R. Civ. P. 63.03. Noting that a "Notice of Judicial Assignment has not yet been issued in these matters," OCC relied on the judge information provided by the tax court administrator on August 21, 2017, to establish that its notice was timely.
On September 5, 2017, OCC asked the tax court administrator whether the September hearing on its motions in limine would be rescheduled in light of its notice to remove. At this point, Hennepin County objected to OCC's notice to remove as untimely, stating that the assigned judge had already presided over the consolidated cases, in May, by granting the parties' joint consolidation request in the May 2017 Order. Accordingly, the County contended, the deadline to file a notice to remove expired in May, and OCC's August notice was untimely under Rule 63.03. OCC, in response, argued that the May 2017 Order consolidating the three appeals was a "ministerial action" that was not "a motion or any other proceeding" within the meaning of Rule 63.03.
The tax court, through the assigned judge, directed the parties to address whether OCC's notice was timely and if so whether it was practicable to honor the notice in the consolidated cases. In response, Hennepin County moved to quash OCC's notice to remove, arguing that it was untimely in light of the May 2017 Order. Further, the County argued, the decision on the consolidation motion was not "ministerial" but was instead a discretionary decision that impacted the work of the court and the parties. Finally, the County argued that the tax court had to determine, as a fact question, whether removal was "practicable" in this case, see Minn. Stat. § 271.06, subd. 7 (stating that the Rules of Civil Procedure govern in the tax court, "where practicable"), given an alleged pattern of judicial removals in unrelated tax court proceedings by OCC's attorneys. The County asked the tax court to conclude "under the unique facts of this case" that honoring the removal notice is impracticable.
OCC opposed the motion to quash, asserting that the May 2017 Order did not *89 "notify the parties of the judge assignment or of any hearing or trial date" and the parties did not have notice of a judge assignment before the tax court issued that order. Under the plain language of Rule 63.03, OCC argued, the time to remove did not begin to run until the parties "actually receive[d] notice of which judge [was] to preside at the hearing or trial," which occurred when the hearing on its motions in limine was scheduled in August 2017. Finally, OCC asserted that the right provided by Rule 63.03, to remove an assigned judge, is a party's right, rather than an attorney's right. Thus, OCC explained, notices of removal filed by counsel for OCC in other tax cases, in which OCC was not a party, were irrelevant to determining whether application of Rule 63.03 is practicable in this case.
The tax court, through the assigned judge, granted the County's motion to quash OCC's notice to remove.[1] The tax court declined to specifically decide whether OCC's notice to remove was timely. Instead, the tax court concluded that it was not "practicable" to honor the removal notice. The tax court was concerned that OCC's counsel had a "practice" of removing the assigned judge, which could impair judicial independence.[2] Relying on our decision in State v. Erickson , 589 N.W.2d 481 (Minn. 1999), the tax court concluded that it could not honor a notice to remove that "strikes at the court's independence." The tax court also concluded that as a court with only three judges, the tax court cannot "honor every notice of removal filed in every case" because to do so would allow parties to effectively choose which judge would hear the case, would constrain the court's ability to effectively and efficiently manage its docket and calendar, and would deplete the limited funding available for appointment of acting judges. In reaching this conclusion, the tax court noted the unique elements of its jurisdiction, as a court with statewide jurisdiction that hears appeals from county property tax determinations, and appeals from sales, income, and other tax assessments by the Commissioner of Revenue. See Minn. Stat. § 271.01, subd. 5 (2016) (stating that the tax court's jurisdiction over the tax laws of the state is "statewide," and defining "tax laws of this state" to include tax laws administered by the Commissioner of Revenue and "laws dealing with property valuation, assessment or taxation of property for property tax purposes").
OCC filed a petition for a writ of mandamus that asks our court to direct the tax court to "vacate" its order quashing the notice to remove. Then, OCC asks that we direct the tax court to assign a new judge to preside over its consolidated tax court appeals. We directed the parties to file informal briefs, and we granted OCC's request for oral argument.
ANALYSIS
In this case, we must decide whether mandamus should be exercised over a pretrial decision of the tax court. A party that seeks a writ of mandamus "directed to *90 ... the tax court" must provide a "statement of the reasons why the extraordinary writ should issue." Minn. R. Civ. App. P. 120.01. Mandamus is an extraordinary legal remedy, Mendota Golf, LLP v. City of Mendota Heights , 708 N.W.2d 162, 171 (Minn. 2006), issued to compel a judicial officer to perform "an act which the law specially enjoins as a duty resulting from an office, trust, or station" or to "discharge any of [the court's] functions," Minn. Stat. § 586.01 (2016). See Latourell v. Dempsey , 518 N.W.2d 564, 565 (Minn. 1994) (explaining that mandamus issues "to compel a judicial officer 'to perform duties with respect to which they plainly have no discretion as to the precise manner of performance and where only one course of action is open' " (quoting State ex rel. Gresham v. Delaney , 213 Minn. 217, 6 N.W.2d 97, 98 (1942) ) ).[3]
The judge that OCC seeks to remove is a judge of the tax court. The tax court, "an independent agency of the executive branch," consists of three judges appointed by the governor with the advice and consent of the Minnesota Senate. Minn. Stat. § 271.01, subd. 1 (2016). Tax court judges "hear, consider, and determine without a jury every appeal [from an order imposing a tax] de novo." Minn. Stat. § 271.06, subd. 6 (2016). Minnesota Statutes chapter 271 provides many of the procedures for proceedings before the tax court but also recognizes that some procedures may be governed by the rules of procedure that apply in the district court. Specifically, "the Rules of Evidence and Civil Procedure for the district court of Minnesota shall govern the procedures in the tax court, where practicable." Minn. Stat. § 271.06, subd. 7.[4]
*91 We have recognized that the Rules of Civil Procedure allow the tax court to efficiently manage its cases, see Odunlade v. City of Minneapolis , 823 N.W.2d 638, 650 (Minn. 2012), and we have turned to those rules when there is no separate or conflicting statute or administrative rule that governs the tax court's procedures. See, e.g. , Kmart Corp. v. Cty. of Clay , 711 N.W.2d 485, 488-89 (Minn. 2006) (applying service requirements from Minn. R. Civ. P. 4, noting that "chapter 278 contains no definition of service," so "there is no conflict between the statute and the rule that would prevent application of [that] rule"); Gale v. Cty. of Hennepin , 609 N.W.2d 887, 890-91 (Minn. 2000) (applying Minn. R. Civ. P. 26 in a property tax dispute to require pretrial discovery of the county's appraisal, noting that the tax court had not adopted "any special rules ... governing discovery or the admission of expert testimony").
The rule of procedure at issue here is Rule 63.03, which provides in relevant part:
Any party or attorney may make and serve on the opposing party and file with the administrator a notice to remove [the judge]. The notice shall be served and filed within ten days after the party receives notice of which judge or judicial officer is to preside at the trial or hearing, but not later than the commencement of the trial or hearing.
No such notice may be filed by a party or party's attorney against a judge or judicial officer who has presided at a motion or any other proceeding of which the party had notice....
Minn. R. Civ. P. 63.03.
The timely filing and service of a notice under Rule 63.03 automatically results in the judge's removal. See McClelland v. Pierce , 376 N.W.2d 217, 219 (Minn. 1985) ("Proof of actual bias or prejudice is not required; the affidavit of prejudice itself is enough."); Peterson v. Bartels , 284 Minn. 463, 170 N.W.2d 572, 574 (1969) (explaining that a timely affidavit of prejudice filed under previous Rule 63.03 required the trial court judge "to disqualify himself"); Jones v. Jones , 242 Minn. 251, 64 N.W.2d 508, 514 (1954) (explaining that the timely filing of an affidavit of prejudice "operates ipso facto to disqualify the presiding judge from hearing the case" and that "[n]othing is left for judicial discretion").[5] A judge's failure to step aside when a timely notice is filed and served is reversible error. See Peterson , 170 N.W.2d at 574 (explaining that when a party has complied with the rule, "it was error for the trial court not to disqualify himself").
With these general principles in mind, we turn to the two questions presented by this case: Was OCC's notice to remove timely, and if so, did the tax court correctly conclude that honoring the notice in this case was impracticable? Whether a *92 notice to remove complies with Rule 63.03, and whether the tax court correctly applied Minn. Stat. § 271.06, subd. 7, are questions of law subject to de novo review. See, e.g. , State v. Cheng , 623 N.W.2d 252, 257 (Minn. 2001) (explaining that an appeal involving removal procedures under the Rules of Criminal Procedure "turns on the interpretation of" a court rule, which "is a legal question that we review de novo").
I.
We first consider whether OCC's notice to remove was timely.[6] We start with the plain language of the rule. See Walsh v. U.S. Bank, N.A. , 851 N.W.2d 598, 601 (Minn. 2014) ("When interpreting a rule, we look first to the plain language of the rule and its purpose."). Two provisions in Rule 63.03 are relevant to the timeliness question. First, a notice to remove in a civil case must be "served and filed within ten days after the party receives notice of which judge or *93 judicial officer is to preside at the trial or hearing." Minn. R. Civ. P. 63.03 (emphasis added). Second, a removal notice cannot be filed "against a judge or judicial officer who has presided at a motion or any other proceeding of which the party had notice ." Id. (emphasis added).
OCC contends that its notice to remove was timely because the parties did not receive notice of which judge would be assigned to preside at a hearing until August 21, when a specific judge was designated to preside at the scheduled hearing on the motions in limine. The County disagrees, asserting that it was "readily apparent" which judge was assigned to preside over the case-the judge who signed the May 2017 Order-and thus, OCC's time to remove expired 10 days after that order was signed in May. This is so, the County argues, because the consolidation order addressed the merits of a fundamental issue-the course of OCC's three appeals in the tax court-and therefore, the judge who signed that Order was "substantively engaged in and handling the matter."
OCC disagrees with the County's designation of the May 11 Order as the start of OCC's 10-day period to remove. OCC notes that this order was a ministerial, administrative scheduling order that, contrary to the direction provided by the July 2016 Order, included no language expressly addressing judge assignment. Further, OCC contends that when the parties submitted the joint consolidation request, they did not have notice of which of the three tax court judges would consider the request or would be assigned to OCC's tax appeals. Under the plain language of Rule 63.03, OCC argues that the May 2017 Order cannot serve as notice of a judge assignment. We agree with OCC that its notice was timely.
The first paragraph of Rule 63.03 requires that notice be served within 10 days after a party receives notice of which judge will preside at a future hearing. Minn. R. Civ. P. 63.03 (requiring notice to be "served and filed within ten days after the party receives notice of which judge or judicial officer is to preside at the trial or hearing"). Plainly, the May 2017 Order does not satisfy this portion of the rule because the parties had no advance notice of which judge would preside over their joint request for consolidation. The parties also did not have any other notice at that point of which judge had been assigned to hear the consolidated case. To conclude that OCC's August 30 notice was untimely under this provision in the rule, as the County argues, would convert the plain language of Rule 63.03 from "notice of which judge" is "to preside" at trial or a hearing-a forward-looking clause-to "notice of which judge signed" an order-a backward-looking clause. But we must apply the rule as written, and under the plain language of the rule, OCC's notice was timely.[7]
The County also points to the second paragraph of Rule 63.03, which provides that a notice to remove cannot be filed "against a judge ... who has presided at a motion or any other proceeding of which the party had notice." Minn. R. Civ. P. 63.03. Because the judge "presided" at "a motion or any other proceeding" by granting the parties' joint request for consolidation in the May 2017 Order, the County argues that OCC's August 30 removal notice was too late. We disagree.
The purpose of the removal procedure "is to give the parties one automatic right to remove a judge before that judge presides over a proceeding involving a substantive issue in the matter." State v. Dahlin , 753 N.W.2d 300, 308 (Minn. 2008) (emphasis added). In this case, the parties did not submit the Joint Statement of the Case and accompanying motion to consolidate to any particular judge, they did not appear in person or before a specific judge to address the motion, and the May 2017 Order issued without any notice of which judge would be issuing that order. Under those circumstances, OCC had no ability to exercise its "automatic right to remove" the judge before the judge addressed the joint request. Id . The May 2017 Order-which is the first notice as to the judge's involvement-simply cannot serve as "notice" of the "proceeding" over which the judge was "to preside" because, obviously, by that point the judge had taken action.[8]
In sum, it is undisputed that the parties did not receive notice before the May 2017 Order of which judge would handle their joint consolidation request. Indeed, until August 21, 2017, the parties had not received formal or express notice regarding a judicial assignment for OCC's consolidated tax appeals. Because OCC's notice to remove was filed within 10 days of the court's administrator's notice on August 21, we conclude that OCC's notice to remove was timely.
II.
Next, we consider whether the tax court erred in concluding that honoring OCC's timely notice to remove was impracticable in this case. The tax court has decided that, in general, it is practicable to honor *94 notices to remove that are filed under Rule 63.03. See Kimberly-Clark Corp. v. Comm'r of Revenue , No. 8670-R, 2015 WL 234718, at *2 (Minn. T.C. Jan. 16, 2015) (stating that " Rule 63.03 notices of removal are 'practicable' in tax court proceedings because-upon the filing of such a notice-a case can simply be re-assigned to one of the court's remaining two judges"). We therefore consider here only whether the tax court erred in concluding that it was not practicable to honor OCC's notice to remove in this particular case.
The tax court identified the following reasons for its conclusion that honoring the notice to remove in this case was not practicable. First, honoring a notice to remove that is part of a pattern of removals strikes at judicial independence. Second, with only three judges, the tax court cannot "honor every notice of removal filed in every case" because to do so would allow parties to effectively choose which judge will hear a case. Third, honoring every notice to remove could constrain the tax court's ability to effectively and efficiently manage its docket and calendar, in part by risking a workload imbalance among the three appointed tax court judges.
The tax court must honor a timely notice to remove if "practicable" to do so. Minn. Stat. § 271.06, subd. 7. See Jones v. Jones , 242 Minn. 251, 64 N.W.2d 508, 514 (1954) (explaining that a timely notice "operates ipso facto to disqualify the presiding judge"). The plain meaning of "practicable" is "capable of being put into practice or being done or accomplished: feasible. [C]apable of being used: usable." Webster's Third New International Dictionary 1780 (2002); see also Bryan A. Garner, A Dictionary of Modern American Usage 513 (1998) ("Practicable = capable of being accomplished; feasible; possible."). We consider each of the tax court's reasons for deciding not to honor OCC's notice to remove in light of this plain meaning.
First, regardless of any pattern or practice of removals by OCC's counsel,[9] nothing in the record establishes that OCC-the party that exercised the right to remove under Rule 63.03 here-has a pattern of filing notices to remove all or any of the tax court judges. The record shows that OCC has filed only one notice to remove in the tax court-the notice at issue in this case. There is no pattern of filing removal notices by OCC, let alone a pattern that demonstrates an abuse of the rule. Similarly, nothing in the record suggests that OCC filed its notice to remove as a means of undermining judicial independence. In short, the record does not establish that it is impracticable to honor OCC's notice to remove in this case because of a pattern or practice of filing removal notices.[10]
*95 Second, nothing in the record shows that OCC filed the notice to remove in order to effectively "choose" the judge assigned to its case. In fact, honoring the notice to remove does not allow OCC to "choose" the judge that will be assigned to this case. Instead, honoring the notice leads to an assignment to one of the two other tax court judges, a decision into which OCC has no input. See Minn. Stat. § 271.02 (2016) (stating that the chief judge of the tax court "shall coordinate and make hearing assignments"). If those judges are not available, a retired judge can be appointed, a decision into which OCC similarly has no input.[11]
Third, while honoring a notice to remove may result in a shift of assignments among the members of a court, the record here does not establish that the shift of a single case from one judge to one of two other judges would in fact lead to a workload imbalance among the three members of the tax court. And nothing in the record suggests that any workload imbalance would result if this case were assigned to a different judge. It may be, as the tax court suggested in its order, that honoring a substantial quantity of removal notices would create logistical challenges in transferring cases equitably and efficiently among the tax court judges. But that difficulty is not present in this case; we are concerned here only with whether it is practicable for the tax court to honor a single removal notice that one party filed. The record simply does not demonstrate or even suggest that honoring a single removal notice, filed in one set of cases consolidated for all purposes, will work the imbalance that the tax court feared.
Because the record does not establish that it would be impracticable to honor OCC's notice to remove in this case, we conclude that the tax court erred in refusing to do so. See Gale , 609 N.W.2d at 891 (stating that "nothing in the record indicat[es] that disclosure" of an assessor's appraisal, as required by discovery rules, "was not practicable").
CONCLUSION
For the foregoing reasons, we grant the petition for a writ of mandamus. The tax court must honor OCC's notice to remove and assign a new judge to the proceedings in the tax court.
Petition granted.

Before resolving the motion to quash, the tax court completed the procedure to ensure that it had the authority to act on the constitutional issues that OCC raised in opposition to the County's motion. See Erie Mining Co. v. Comm'r of Revenue , 343 N.W.2d 261, 264 (Minn. 1984) (explaining the procedure for the tax court to secure subject matter jurisdiction over constitutional issues).

Eventually, the tax court amended the initial order that quashed the notice to remove, to substitute references to the law firm that represents OCC with the phrase, "counsel for OCC." The tax court did not substantively change its order with this substitution, so for purposes of this opinion, we refer only to the tax court's final order.

We have said that "a writ of prohibition is the appropriate form of relief" when "a trial judge refuses to honor an affidavit of prejudice properly filed pursuant to Rule 63.03." McClelland v. Pierce , 376 N.W.2d 217, 219 (Minn. 1985) ; cf. State v. Finch , 865 N.W.2d 696, 700 (Minn. 2015) ("We have held that the denial of a peremptory removal must be challenged via a petition for a writ of prohibition."). But we have also considered challenges to removal decisions when mandamus was sought, explaining that " '[t]he question ... is not the form of relief but rather the validity of the basis upon which it was awarded.' " State v. Burrell , 743 N.W.2d 596, 601 (Minn. 2008) (quoting McClelland , 376 N.W.2d at 219 ); see also Minn. State Bar Ass'n v. Divorce Educ. Assocs. , 300 Minn. 323, 219 N.W.2d 920, 920 (1974) (stating that a writ of mandamus was sought to allow an affidavit of prejudice to be filed). Although we adhere to our previous endorsement of prohibition as the appropriate remedy, we conclude that mandamus can be sought in the circumstances of this case. We also reject the County's argument that extraordinary relief cannot be granted because the tax court exercised its discretion over case management matters. We consider here the tax court's decision not to honor a notice to remove because it is not practicable to do so. This is not a discretionary decision about case management. Rather, the decision to honor (or not) a removal notice is a question of law that requires interpretation of court rules and statutes. See State v. Cheng , 623 N.W.2d 252, 257 (Minn. 2001).

The tax court has adopted some rules to govern procedures in that court, see Minn. R. 8610.0010 -.0150 (2017), but none of these rules specifically addresses assignment, removal, or related procedures regarding judicial assignments. Further, although the Rules of Civil Procedure do not govern "practice and procedure" in property tax appeals in the tax court, such as OCC's consolidated cases, "insofar as [the statutory procedures] are inconsistent or in conflict with the rules," Minn. R. Civ. P. 81.01(a), neither the parties nor the tax court identified a conflicting statute. In fact, the authority for appointment of a retired judge, see Minn. Stat. § 271.01, subd. 1a (2016), suggests that the Legislature recognizes that removal of the active members of the tax court may occur. See also Kimberly-Clark Corp. v. Comm'r of Revenue , No. 8670-R, 2015 WL 234718, at *2 (Minn. T.C. Jan. 16, 2015) (stating that "Rule 63.03 notices of removal are 'practicable' in tax court proceedings because-upon the filing of such a notice-a case can simply be re-assigned to one of the court's remaining two judges").

Before 1985, Rule 63.03 provided for the filing of an "affidavit ... of prejudice or bias," in which the party attested to "good reason to believe" that a "fair trial or hearing" could not be obtained before the assigned judge. Minn. R. Civ. P. 63.03 (1984). When a timely affidavit was filed, the clerk assigned the case to another judge in the same district. Id. Rule 63.03 was rewritten in 1985 to adopt the "notice to remove" standard, see Minn. R. Civ. P. 63.03, advisory comm. note-1985, which relieved a party of the obligation to assert a good-faith belief that the assigned judge was prejudiced. Although the name and the details of the filing have changed, the result, if timely, is the same: removal is automatic. See 2A David F. Herr & Roger S. Haydock, Minnesota Practice -Civil Rules Ann. § 63.11 (5th ed. 2012) (explaining that "a notice to remove properly and timely filed pursuant to Rule 63.03... mandates reassignment of the case and bars any further exercise of judicial power").

We have said that it is "the duty of" the judge whose removal is sought to determine whether the notice is timely. State ex rel. Peterson v. Enersen , 197 Minn. 391, 267 N.W. 218, 219-20 (1936) (stating that once an affidavit of prejudice is filed, "it became the duty of" the judge to determine whether the affidavit was timely filed). Although the tax court declined to decide whether OCC's notice to remove was timely, a remand for that determination is not necessary given the record before us and the undisputed facts regarding the timing of the relevant events in this case. See Finch , 865 N.W.2d at 701 (explaining that we "examin[e] three simple criteria: whether the notice to remove was properly filed, timely served, and effective").

The tax court effectively told the parties not to assume that the judge that signs an order will be the judge assigned for trial. Instead, the tax court told the parties in the July 2016 Order that "the tax court administrator will assign a judge, schedule the trial in this matter, and notify the parties of the judge assignment and the trial date." This promised assignment and notification did not occur with the May 2017 Order.

Because we conclude that the tax court's approval of the parties' joint scheduling request was not a proceeding "of which [OCC] had notice," Minn. R. Civ. P. 63.03, we need not decide whether, as the County contends, the tax court's decision to consolidate the three tax appeals was substantive.

Rule 63.03 states that a "party or attorney" can serve and file a notice to remove. We read the separate references in the first sentence of Rule 63.03 to a "party" and an "attorney" to encompass self-represented parties and represented parties. See Minn. R. Civ. P. 63.03 (referring in the second paragraph of the rule to a notice filed "by a party or party's attorney"). We do not read the rule to confer a right on an attorney to file a notice to remove that is independent of or separate from the right of an attorney's client. For this reason, we need not address whether it is impracticable to honor the removal notice in this case because of any pattern or practice of removals by OCC's counsel.

While the tax court cited Erickson , 589 N.W.2d 481, that case is inapposite. There, the State-that is, the party -exercised its peremptory right of removal in over 70 percent of all criminal cases filed in Kandiyohi County and assigned to a specific judge. See 589 N.W.2d at 482. In those extraordinary circumstances and in light of the prosecutor's "unique and powerful position," we concluded that the "conflict between the spirit of the rule and the use of the rule" should be "remedied through an exercise of our inherent power." Id. at 485. OCC's single exercise of its removal right does not present similar circumstances.

Like the authority for appointment of retired district court judges, the tax court can appoint a retired judge "to hear any case properly assignable to a judge of the tax court and to act on it with the full powers of a judge of the tax court." Minn. Stat. § 271.01, subd. 1a. See Minn. Stat. § 2.724, subd. 3(a) (2016) (providing for assignment of a "retired judge of any court to act as a judge of any court except the Supreme Court"). And, like the appointment of retired judges in the district courts, making such an appointment has a financial component. Compare Minn. Stat. § 2.724, subd. 3(b) (2016) (requiring "pay and expenses in the amount established" by order for a retired judge appointed to serve), with Minn. Stat. § 271.01, subd. 1a (requiring "pay and expenses in the amount and manner provided by law" for an assigned retired judge). The record does not establish that the Legislature has not provided funding to the tax court for the appointment of retired judges, or that the tax court would be financially unable to compensate a judge appointed to serve in this case.